## IN THE

# SUPREME JUDICIAL COURT,

### IN THE

## COUNTY OF PENOBSCOT,

### ARGUED AT JULY TERM, 1845.

### CALEB CHASE & al. versus GEORGE PALMER & al.

A bill in equity must state a cause within the appropriate jurisdiction of this Court as a court of equity. If it fails in this respect, the error is fatal in every stage of the cause, and can never be cured by any waiver, or course of proceedings, by the parties. The Court itself cannot act, except upon its own intrinsic authority, in matters of jurisdiction.

Under the provisions of the Revised Statutes, c. 96, and c. 125, this Court, as a court of equity, has no power to act on the subject of " foreclosure of mortgaged estates."

The mortgagee is not accountable to the mortgagor, nor to any one claiming under him, for rents and profits of the estate anterior to his entering into the possession thereof; nor is the mortgagor accountable to the mortgagee for the same until the latter has taken possession of the estate mortgaged.

At law, when a married woman who is entitled to a distributive share in the estate of a deceased relative, receives the amount herself, separate from her husband, and with his assent, it immediately becomes the estate of the husband, as much as any other funds he may hold.

And the rule is the same in equity, if the husband is insolvent at the time, and the fund is wanted for the payment of his debts.

Where the husband purchased an estate encumbered by a mortgage, and afterwards mortgaged the same to another; and subsequently the wife, with the consent of the husband, received money belonging to her as her distributive share of an estate to which she was an heir, and delivered the same herself to a friend, to be by him appropriated to procure the assignment of the first mortgage to himself, to be holden in trust for her benefit,

and the money was so appropriated and the mortgage assigned ; *it was held,* in a bill in equity brought by the last mortgagee, whose debt remained unpaid, against the husband and wife and assignee, that the first mortgage was thereby discharged.

BILL IN EQUITY, brought by Chase and Grew against George Palmer, Abigail Palmer, his wife, and Charles Palmer.

On the ninth of September, 1833, George Palmer purchased the right of redeeming a house and lot in Bangor, then encumbered by two mortgages thereon, made by former owners, to the amount of nearly the value of the premises. On July 10, 1837, George Palmer mortgaged the same to Chase and Grew, the plaintiffs. In 1840 the two first mortgages, while the amount thereof remained unpaid, were assigned to Charles Palmer. The plaintiffs allege, in their bill, that the purchases of those mortgages were made by Charles Palmer with the funds of George Palmer and in trust for him ; and that the plaintiffs, as grantees of George Palmer, are entitled under his covenants of warranty to the full benefit of these purchases. The defendants allege, that the funds, with which the purchases were made, were a portion of the personal estate of Abigail Palmer, the wife of George, being her distributive shares in the estate of her grandmother and of her former husband ; and that the same passed from the hands of the administrators directly to her, and from her to Charles Palmer, to be by him invested, under a written agreement, in the purchase of those mortgages, to be held by said Charles in trust for her; and that George Palmer never interfered with the property of his wife, but knew and approved of her obtaining and appropriating her own private property in this way, that she might have a house to live in. The hearing was on the bill, answers and evidence. The portions thereof considered to be important are stated in the opinion of the Court.

*Hobbs,* for the plaintiffs, examined the evidence, and contended that the view taken by the counsel for the plaintiffs was the correct one.

When personal property of the wife is reduced to her actual possession, such possession is that of the husband, and becomes

a part of his personal estate.  2 Kent, 162.  All the property of the wife passes to the husband by the marriage ; if in possession of the wife, absolutely; if in action, conditionally. Co. Lit. 351 ; 2 Bl. Com. 433 ; 8 Mass. R. 99.  A legacy given to the wife, and her distributive in an intestate estate, vest absolutely in the husband.  Com. Dig. Bar. & Feme, E. 3 ; 12 Pick. 175 ; 8 Ves. 599 ; 8 Mass. R. 229 ; 8 Pick. 211. The property in law vested in the husband, in this case, absolutely, when the wife received it, and he could not divest himself of it to make a provision for his wife, if thereby he defrauded his creditors.  2 Kent, 163 ; 8 Pick. 211 ; 3 Johns. Ch. R. 492 ; 4 Johns. Ch. R. 450 ; 2 Story's Eq. § 1375.  If the husband or wife receive the money, or if he alone, or he and his wife authorize a person to receive it, who actually obtains it, it is a reduction of the chose in action to the husband's possession.  If the wife, herself, receives the money, it becomes that instant the property of her husband.  1 Wms. Ex'ors, 556 ; 12 Ves. 473 ; 1 East, 432 ; 17 Maine R. 301.

*J. Appleton,* on the same side, cited 2 Des. 254 ; Bing. on Inf. & Cov. 209 ; 2 Atk. 208 ; 2 Kent, 136 ; 5 Johns. Ch. R. 196 ; 20 Pick. 564 ; 17 Johns. R. 271 ; Clancy on Rights of Married Women, 262 ; 15 Maine R. 304 ; 3 Greenl. 50 ; 9 Cowen, 463 ; 12 Pick. 173 ; 6 Greenl. 269.

*A. T. Palmer,* for the defendants, examined the bill, answers and evidence, and said that the answers disclosed the true state of the case, and that they were not contradicted by the evidence.

The general proposition for which the defendants contend is, that the wife has the power, with the assent of her husband, to transfer any portion of her distributive shares in estates, from the possession of the administrators, to that of a trustee for her benefit ; and with this the creditors of the husband have no right to interfere.  While the property remained in the hands of the administrators the husband's creditors could not touch it.  It was no fund for the payment of his debts.  It might remain until after the husband's death, and his creditors could not be entitled to it.  It is the duty of

courts of equity to protect the property of the wife, and to see that she has the benefit of it.

A legacy, or distributive share in the hands of an administrator, is a mere chose in action. 2 Brockenb. 285; 4 Metc. 486.

Nor is there any distinction as to choses in action accruing to the wife before or during the coverture. She is entitled to either, if not reduced to possession, while the coverture exists. 20 Pick. 517; 5 Johns. Ch. R. 196; 2 Serg. & R. 491; 4 Rawle, 177; 4 Metc. 486; 22 Maine R. 335. The same cases show, that there must be some act done by the husband with the intention of reducing to possession the choses in action of his wife, or they remain hers.

The idea that her receiving the money, to be appropriated in another manner to her separate use, is a reduction to possession by the husband, is not supported by reason or authority. That doctrine would negative the possibility of her having her own property for her separate use. Such is not the law in courts of equity. 2 Story's Eq. § 1368; *Flagg* v. *Mann,* 2 Sumn. 487. Where there has been an intention not to reduce to possession by the husband, or where he 'has declined or neglected to do so, the right of the wife has been sustained. 16 Mass. R. 480; 17 Mass. R. 57; 13 English Ch. R. 281; 9 Ves. 175; 12 Ves. 497; 2 Call, 447; 16 Ves. 413; 2 Brock. 285.

The creditors, or assignees of the husband can be placed in no better situation, than the husband himself, as to the property of the wife. And equity will not assist him to reduce the choses in action of the wife to possession, without making a proper provision for her. 2 Story's Eq. 631, 634; 1 Roper on Hus. & Wife, 269; 6 Metc. 537.

Charles Palmer holds the mortgages of this property in trust for Mrs. Palmer; a trust which a court of equity should protect and enforce in her favor. 4 Russell, 422; 1 Paige, 494; 21 Maine R. 195; 8 Pick. 388; 2 Pick. 206.

*Cutting,* also argued for the defendants.

*J. Appleton,* for the plaintiffs, replied.

The opinion of the Court was drawn up by

WHITMAN C. J. — This is a suit in equity. In regard to such suits, the jurisdiction conferred upon this Court is limited and specific. Even in courts of general equity jurisdiction, the "bill must state a cause within the appropriate jurisdiction of a court of equity. If it fails in this respect the error is fatal in every stage of the cause; and can never be cured by any waiver, or course of proceeding by the parties." "The Court itself cannot act except upon its own intrinsic authority in matters of jurisdiction." Story's Eq. Pl. 8.

One of the defendants, George Palmer, is alleged in the bill to have mortgaged the premises in question to the plaintiffs. The proper proceeding against him would seem to be to obtain possession of, or to foreclose the mortgage. Yet we do not understand such to be the object of this bill. And if it were, though this Court, by the Revised Statutes, c. 96, is in terms authorized to take cognizance, as a court of equity, of "suits for the redemption and foreclosure of mortgaged estates," it is believed, that the statute concerning mortgages, c. 125, actually precludes any action of this Court, sitting in equity, on the subject of foreclosing mortgages; the provisions of that statute containing the rules, which must govern in reference thereto; and none of them having reference to the action of a court of equity. The language of the statute therefore, as to foreclosing mortgages in a court of equity, is inappropriate, and must have been introduced inadvertently, without recurring to the specific provisions enacted for the purpose.

What, then, is the object of this bill, of which a court of equity can take cognizance? It recites a willingness to redeem certain mortgages, older in date than that held of the premises by the plaintiffs; and sets forth, that means have been taken to obtain from the defendants, one of whom is alleged to have obtained an assignment of them in trust for one or both of the others, information of the amount due on them, with a view to make a tender of such amount; and that the plaintiffs have been frustrated in that attempt, by the refusal of the defendants to make such statement. But the bill does not conclude

with any prayer, particularly, that any account may be taken, to ascertain the amount to be paid, in order to a redemption; or that the plaintiffs may be allowed to redeem those mortgages; nor are we furnished with any proof, that the defendants, who peremptorily deny any refusal or neglect on their part to state the amount due on those mortgages, to overcome such denial; nor is it stated or proved, that any tender of the amount due on those prior mortgages, has ever been made. The bill, therefore, if such were in fact the object of it, is not sustainable for the purpose.

The bill, however, further sets forth, that the defendants have conspired, for the purpose of wronging the plaintiffs, to have those prior mortgages assigned to the defendant, Charles Palmer, for the use and benefit of the said George, and by the use of his funds; and thereupon prays that the defendants may be decreed to account for, and pay over to the plaintiffs, such rents and profits as they have received or might have received from the premises mortgaged by the said George to the plaintiffs; and that such prior mortgages may be decreed to be canceled.

The first inquiry, which would naturally occur upon this branch of the case, is, what right, under a proceeding in equity, has a mortgagee to claim of his mortgagor, or of others, not in the possession of the mortgaged estate, as is the condition of Charles Palmer, to be paid for rents and profits of the estate, holden by him in mortgage, anterior to his entering into the possession thereof. It is believed that such a claim is unprecedented and not sustainable. It has been often ruled, that the mortgagor is not accountable to the mortgagee for rents and profits, till the latter has entered into possession for condition broken or otherwise.

The claim, however, to have the prior mortgages canceled, may be supported, if we can regard them as having been discharged by payment. The averment in the bill, that they have been purchased by Charles Palmer, with the funds of George, and are holden in trust for the latter, may be regarded as tantamount to an averment, that they have been discharged

by payment. In § 16, 17, and 18, of the Revised Statutes, c. 125, it appears to be provided, that whenever any sum of money due on a mortgage, has been paid or tendered to the mortgagee, or person claiming under him, by the mortgagor, or person claiming under him, within the time prescribed for the redemption of mortgaged estates, he may have a bill in equity for the redemption of the mortgaged premises. The preliminary demand of a statement of the amount due, in order to the sustaining of a bill, is, in such case, dispensed with.

It seems to be conceded on all hands, that Charles Palmer holds the prior mortgages in trust for some one. It is equally clear, that, of his own funds, he has paid nothing for them. The defence is, that he holds them in trust for Abigail, the wife of George, and one of the parties defendant. She and her husband, in their answers, state, that the purchase was made at her request, and with her money, received by her, partly for her distributive share in the estate of her grandmother, and partly for her share of the estate of her former husband; and, although received since her intermarriage with her present husband, yet that it never went through his hands or was ever in his possession; but was paid directly to her; and it is insisted, therefore, that it was her separate property. And the statement further is, by all the defendants, that she furnished Charles with the funds to buy those mortgages. The evidence, however, that she received the money herself, without the intervention of her husband is at least doubtful. But suppose it to be a fact, that Mrs. Palmer received the money herself, personally, from the sources named in her answers, and kept it in her possession till delivered over to Charles, how will the case stand?

When a woman marries, there is no question, but that whatever money she possesses instantly becomes her husband's. All the authorities agree in this point. How does it vary the case that it comes into her hands for a debt before due, or for a legacy or distributive share of the estate of a relative? Mr. Reeve, in his Domestic Relations, lays down the law in this

wise. He says, "I know of no difference between money belonging to her (the wife) in the hands of trustees, and money paid to her, which would certainly belong to the husband." Though the first part of this position, as to money in the hands of trustees, may be questionable, and the correctness of it has been doubted, the latter part, as to money paid to her, remains unshaken. If, then, the money, as is alleged, came directly into the hands of Mrs. Palmer, and remained there till handed over to Charles, for the purpose named, it became the property of her husband; as much so as if actually paid to him. The same author, at page 60, says further, that even a legacy bequeathed to a married woman, not named as being for her exclusive use, vests in the husband; and that he may sue for it, without joining her in the suit. This, according to modern authorities, must be confined to suits at law; and legacies in this State are only so recoverable. Where suits in equity may be brought for legacies, bequeathed to the wife, she must be joined, that the Court may have it in its power to compel him to make suitable provision for her out of them. If a note be given to a *feme covert* for a legacy bequeathed to her, it will be the property of the husband. *Commonwealth* v. *Manley,* 12 Pick. 173. So if husband and wife jointly empower a person to receive a legacy, bequeathed to her, the instant he receives it, it becomes the absolute property of the husband. *Huntly* v. *Griffith,* Moore, 452. These cases show that legacies and distributive shares, coming to the wife, vest in the husband, and become his absolutely, the moment they cease to be choses in action. When paid to the wife, with his approbation, they are paid to his lawfully authorized agent, and virtually to him; and become his, as much so as any other funds he may hold. The money, then, which Mrs. Palmer received, whether for legacies or distributive shares in the estates of her relatives, whether paid first to him or her, became the money of her husband; and that money it was, if the statement of herself and husband may be believed, with which the prior mortgages were purchased.

But it is urged, that her husband gave her the money, as

and for her own, exclusively ; and so that she might employ it for her own benefit, independent of his control. And equity recognizes the validity of such gifts, though the common law does not. But, even in equity, the rule is not without an exception. To make such a gift valid it must be free from injury to others, viz. to creditors. If the husband be insolvent, as in this instance he unquestionably was, he had no power to alienate any portion of her funds gratuitously ; not even to his wife. *Stanning & al.* v. *Style,* 3 Peere Wms. 334.

Impressed with these views of the state of the case, we have not deemed it important, that we should minutely examine, as to the discrepancies between the statements of Mrs. Palmer, and the evidence adduced, in reference to how she came by the funds, with which to purchase the prior mortgages. It is obvious that serious difficulties would be encountered in an attempt to reconcile them.

On the whole, we are brought to the conclusion, that the prior mortgages have, in effect, been discharged by the use of the funds of the defendant, George Palmer, whose duty it was to discharge them, and free the premises from their incumbrance, in order to give effect to his mortgage to the plaintiffs. The sums alleged to have been advanced in making improvements and repairs were derived from the same sources, as those for purchasing in the prior mortgages, and must fall into the same category. Whatever the mortgagor may do of that kind, cannot be taken into consideration as affecting the claim of the mortgagee. Charles Palmer must be decreed to extinguish his claim under the prior mortgages ; and George Palmer and his wife, Abigail, must be enjoined never to set up any claim under them adverse to that of the plaintiffs. And a decree may be drawn up in form, and entered accordingly.

*The plaintiffs are allowed their costs.*