Dow and others, Trustees, *v.* Memphis & L. R. R. Co., as reorganized.[1]

(*Circuit Court, E. D. Arkansas.* April Term, 1884.)

1. Mortgagor and Mortgagee — Default — Possession after — Rents and Profits — Right to — Accounting for.

When a mortgagee allows a mortgagor to remain in possession of the mortgaged property after default, the latter takes the rents and profits to his own use, and the former cannot require him to account therefor, nor recover them from him.

2. Same — Railroad Company — Mortgage Description — Costruction of.

When a railroad company mortgages its "income, earnings," etc., the words being prospective in their operation, the use of the word "moneys" in connection with them does not enlarge the rights of the mortgagee, so as to convey to him such moneys as are simply past income and earnings.

3. Same — Equitable Action to Foreclose Mortgage — Appointment of Receiver — Rights of Mortgagor.

Where certain provisions in the order of a court appointing a receiver of mortgaged property flow from the mere discretion of the chancellor, they cannot be made the basis of invading the absolute right of the mortgagor.

4. Same — Preference of Creditors — Right of Corporation — Effect of Order of Court on.

The right of a corporation to prefer its creditors cannot be defeated by the order of a court, in an equitable action to foreclose a mortgage, by taking into its possession property not covered by the mortgage, which ought to have been left in the hands of the company.

5. Same — Practice and Procedure — Motion to Strike Out.

A motion to strike out from the order of a court, in an equitable action to foreclose a mortgage given by a railroad company, so much as requires the corporation to deliver to a receiver moneys on hand, being unexpended earnings of the mortgaged property not included in the mortgage, will be granted.

On Defendant's Motion to Modify the Order appointing the Receiver.

[1] See S. C. *ante*, 260.

*U. M. & G. B. Rose*, for plaintiffs.

*B. C. Brown*, for defendant.

BREWER, J. The defendant's mortgage, in terms, conveyed "all the income, rents, issues, tolls, profits, receipts, *moneys*, rights, benefits, and advantages had, received, or derived by the said railroad company from its railroad or other property, or in any other way whatsoever." There was also in the mortgage a stipulation for the retention of possession by the mortgagor until default in the payment of interest. On April 15th a receiver was appointed, and the defendant was required by the order of this court to deliver to him all its property, including therein the moneys then on hand. At that time it had in its possession $32,216.20. Thereafter, the defendant moved to strike from the order so much as required it to deliver to the receiver these moneys. It is admitted that these moneys were derived solely from the operation of the road and the use of the mortgaged property.

This, therefore, is the question presented: Could the mortgagor, having in his possession unexpended earnings of the mortgaged property, be compelled to turn those earnings over for the benefit of the mortgagee? The general proposition is, of course, beyond dispute, that when a mortgagee allows a mortgagor to remain in possession after default, the latter takes the rents and profits to his own use, and the former cannot require him to account therefor, nor recover them from him. It were mere affectation of learning to go into any extended investigation of this question. The doctrine is fully stated in Jones, Mortg., as follows:

"So long as the mortgagor is allowed to remain in possession he is entitled to receive and apply to his own use the income and profits of the mortgaged estate. He is not liable for the rent. His contract is to pay interest, and not rent. Although the mortgagee may have the right to take possession upon a breach of the condition, if he does not exercise the right he cannot claim the profits. Upon a bill in equity to obtain foreclosure and sale, he may, in proper cases, apply for the appointment of a receiver, to take for his benefit the earnings of the property. If he neglect to do this, the final decree, if silent upon this subject, does not affect the mortgagor's possession or right to the earnings in the mean time. The sale under the decree, except where statutes provide otherwise, wholly divests him of title, and consequently of right to possession.

"These principles are the same whatever be the subject of the mortgage. Although the mortgage be given by a railroad company, and by its terms includes not only its property and franchises, but also 'the tolls, rents, and profits to be had, gained, or levied therefrom,' but it is implied from the mortgage that the company is to hold possession and receive the earnings of the road until the mortgagee takes it, or the proper judicial authority should interpose, the possession, so long as it is continuous, gives the right to receive the income of the road, and to apply it to the general purposes and debts of the company. So long as the company is allowed to receive the income of the road it is within its discretion to decide what shall be done with it. The mortgage does not affect the application of it. If the mortgagees want it they must take possession of the road; or, pending a bill to foreclose the mortgage, apply for the appointment of a receiver. Upon the appointment of a receiver

he cannot maintain a suit to recover earnings of the road in the hands of an agent which accrued before the receiver's appointment.

"In like manner, if the mortgage be of leasehold premises, and the mortgagor hold over after breach of the condition, the law does not imply an obligation on his part to pay rent previous to an entry by the mortgagee." Section 670.

"The mortgagor, while in possession, is entitled to the rents. So long as the mortgagor is allowed to remain in possession without an actual entry by the mortgagee, although there has been a breach of the condition of the mortgage, he is entitled to receive the rents and profits to his own use, and is not liable to account for them to the mortgagee. If the premises are under lease, the right of the mortgagor in possession to the rents is the same, whether the lease was made before or after the mortgage. He may lawfully receive the rents until the mortgagee interferes, and he receives them to his own absolute use, and not to the use of the mortgagee." Section 771.

See, also, the following authorities cited by counsel for the defendant: 2 Washb. Real Prop. 156; *Higgins* v. *Building Co.* 2 Atk. 107; *Mead* v. *Orrery*, 3 Atk. 244; *Colman* v. *St. Albans*, 3 Ves. Jr. 25; *Hughes* v. *Edwards*, 9 Wheat. 500; *Wilder* v. *Houghton*, 1 Pick. 87; *Bank* v. *Reed*, 8 Pick. 461; *Mayo* v. *Fletcher*, 14 Pick. 525; *Field* v. *Swan*, 10 Metc. 112; *Chase* v. *Palmer*, 25 Me. 341; *Long* v. *Wade*, 70 Me. 358.

This being the general doctrine, I do not think the use of the word "moneys" enlarges the rights of the mortgagee, and if a mortgage of the income and earnings does not convey past income and earnings, a mortgage of moneys will not convey such moneys as are simply income and earnings. Such words as these,—income, earnings, moneys—are prospective and not retrospective in their operation.

The case of *Noyes* v. *Rich*, 52 Me. 115, is in point. In that case the plaintiff had been appointed receiver of a railroad. The defendant had been superintendent, and had moneys in his possession which had accrued from running the road. The mortgage conveyed, among other things, the income. The plaintiff sought to recover this money. The court says:

"The right of the plaintiff cannot extend beyond the property mortgaged; *and the right of the receiver must necessarily have the same limitation.* * * * It will hardly be contended that, while mortgagors remain in possession, they can be compelled to pay the rents and profits of the property to the mortgagees. And yet that is just what is attempted in the case at bar. No one had ever rightfully taken possession under the mortgage until it was done by the receiver, in March, 1860. The money in the defendant's hands accrued from the earnings of the road prior to that time. The mortgage did not attach to it. Therefore, it was not embraced in the subject-matter of the suit in equity, and the receiver was not entitled to it." See, also, *Railroad Co.* v. *Cowdrey*, 11 Wall. 482.

In *Gilman* v. *The Telegraph Co.* 91 U. S. 615, the contest was between a general creditor of a railroad company and the mortgagee, as to moneys in possession derived from the operation of the road, and the rights of the creditor were held paramount. The court, by SWAYNE, J., thus states the law:

"A mortgagor of real estate is not liable for rent while in possession. 2 Kent, Comm. 172. He contracts to pay interest and not rent. In *Chinnery* v. *Blackman*, 3 Doug. 391, the mortgagor of a ship sued for freight earned the mortgage was given, but unpaid. Lord MANSFIELD said: ' Until the after mortgagee takes possession the mortgagor is owner to all the world, and is entitled to all the profit made.' It is clearly implied in these mortgages that the railroad company should hold possession and receive the earnings until the mortgagees should take possession, or the proper judicial authority should interpose. Possession draws after it the right to receive and apply the income. Without this the road could not be operated, and no profit could be made. Mere possession would have been useless to all concerned. The right to apply enough of the income to operate the road will not be questioned. The amount to be so applied was within the discretion of the company. The same discretion extended to the surplus. It was for the company to decide what should be done with it. In this condition of things the whole fund belonged to the company, and was subject to its control. It was therefore liable to the creditors of the company as if the mortgages did not exist. They in nowise affected it."

In *Bridge Co.* v. *Heidelbach*, 94 U. S. 800, there was a similar controversy with the same result, and in that case the court says:

"The mortgage could have no retrospective effect as to previous income and earnings. The bill of the trustees does not affect the rights of the parties. It is an attempt to extend the mortgage to what it cannot be made to reach. Such a proceeding does not create any new right. It can only enforce those which exist already. The bill of the trustees is as ineffectual as if the fund were any other property, real, personal, or mixed, acquired by the mortgagee *aliunde*, and never within the scope of the mortgage." See, also, *Kountze* v. *Omaha Hotel Co.* 107 U. S. 378; S. C. 2 Sup. Ct. Rep. 911.

It is true, in the cases from 91 and 94 U. S., *supra*, the contest was between a creditor of the mortgagor and the mortgagee; but if the income—the moneys—passed by the mortgage, then, of course, the rights of the mortgagee must have been adjudged paramount, for in both cases the lien of the mortgage was prior to that of the judgment; so, when the court held that the judgment had preference, it clearly affirmed that the mortgage did not cover the moneys.

In the case from 52 Me., *supra*, no rights of a creditor had intervened, and the question was solely between the mortgagee and the mortgagor.

Suppose, in this case, the mortgagor were an individual, instead of a corporation, and that he had in his pocket, at the time of the appointment of the receiver, moneys which he had received from the operation of the road; would it not seem a strange order to compel him to pay over such moneys to the receiver. Could such an order be entered without, in effect, making him responsible for profits, income, moneys received; and if he is liable for any of them, is that liability limited to the amount which he has failed to expend? If he is liable at all, why is he not liable for all the profits, income, and moneys received? It would seem that no just discrimination can be made, and that the addition of the word "moneys" in the mortgage does not mean anything beyond the words "income and profits,

tolls and rents," and must, like them, be adjudged to have simply a prospective operation. It is true that there is a large equity in favor of turning over this money to the receiver, because the court, by other provisions of its order, required the receiver to pay certain past indebtedness of the company; but such provisions flow from the mere discretion of the chancellor, and cannot be made the basis of invading the absolute right of the mortgagor. If the rents, the profits, the income, received by the mortgagor prior to the taking possession were his absolutely, and he not liable to account for what he has received, —and that such is the law seems to be settled by the authorities,—I cannot think the rights of the parties are at all changed by the addition of the word "moneys." Of course that term would have operation distinct from the word "income," if there should chance to be in the possession of the mortgagor moneys received from the sale of rolling stock, lands, or other tangible property.

My conclusion, therefore, is that, notwithstanding the term "moneys" is used in this mortgage, moneys which are in the possession of the mortgagor, and received solely from the prior operation of the road, belong absolutely to him, and cannot be appropriated by the mortgagee.

Again, it is insisted that, inasmuch as the application for a receiver was made some days before the appointment, and on application of the defendant, the hearing of the application was postponed and the *status quo* preserved by the following order:

"It is now ordered that both parties have leave until the seventh day of April next to file printed briefs on the motion for the appointment of a receiver herein; and it is further ordered that the defendant, until further order herein, hold the property mentioned in the bill herein subject to the order of the court; and the defendant has leave to plead, answer, or demur to the bill or complaint herein on the seventh day of April."

And as' it further appears that on the day this order was made the defendant had on hand $42,123.68, and had between that time and the appointment of the receiver paid out $46,458.16, it is apparent that the money on hand was, in fact, money earned during the pendency of this motion, and while the directors of the defendant were, in effect, receivers of this court. I do not think this claim can be sustained, because the moneys paid out were paid out for operating expenses, and could more properly be charged to the earnings of the road during that time than to those funds accumulated at the time the first order was made. In fact, the mortgagee is benefited by the action of the company, for, at the time the application was first made, it had $46,000 on hand which it could have used as it saw fit, and which, to the amount of $11,000, it has expended in the payment of those debts, which, by the final order appointing the receiver, were chargeable on the future earnings of the road, and to to that extent postponed the mortgagees.

Still, again, it is insisted that certain judgment creditors have in-

tervened, and the court is asked to turn this money over to the intervenors instead of back to the company. I think not. Doubtless in the hands of the company it can be reached by creditors, but I think the right of the corporation to prefer its creditors should not be defeated by the action of the court in taking in the first instance moneys into its possession which ought properly to have been left with the company. In this equitable suit to foreclose a mortgage, it is not the province of the court to determine what creditors the company should pay with such moneys or property as do not fall within the terms of the mortgage, and which should have been left within the absolute dominion of the debtor, subject to its own appropriation, or to seizure by creditors in the ordinary processes of the law.

I think, therefore, the motion of the defendant should be sustained, and the moneys ordered returned to the company defendant; and it is so ordered.