# CASES DECIDED

AT THE

# OCTOBER · TERM, 1891.

### Ellison *v.* Georgia Railroad Co., and *vice versa.*

1. Courts of final review are bound by the rule of *stare decisis,* both as a canon of public good, and a law of self-preservation; nevertheless, where a grave and palpable error, widely affecting the administration of justice, must either be solemnly sanctioned or repudiated, the maxim which applies is *Fiat justitia ruat cœlum.*
2. Amendment is a resource against waste. It proceeds on the principle that it is better to preserve what has been done and improve it than to throw it away. There is as much reason for correcting important defects as the less important, and those of substance as those of form.
3. Amendment of substance at an early stage has always been allowable as matter of judicial discretion. The act of 1854 made it matter of right at any stage. The code does the same, "provided there is enough to amend by," and with a further restriction against adding new parties or a new cause of action. The act made the right at law as broad as in equity, and *vice versa,* and this feature is retained by the code.
4. As a declaration must contain all the substance requisite to enable the plaintiff to recover, no amendment of its form would be of any value without a complete cause of action in substance. Hence, in order for a declaration to be amendable in form, a substantial cause of action must appear, otherwise there is not enough to amend by.
5. But when the amendment needed is one of substance itself, "enough to amend by" does not mean the same as "enough to be good in substance without amendment." On the contrary, failing to be good in substance is generally the reason why amendment of substance is needed. "Enough to amend by" is to be determined by what is enough relatively to the particular amendment needed and offered. There may be enough to amend by in one respect, though not in another. The code does not make the standard for form and substance the same. In this regard, it has been misconstrued, and the case of *Martin* v. *The Gainesville, J. & S. Railroad Co.,* 78 *Ga.* 307, based upon such misconstruction, is hereby overruled.

| 87 | 691 |
| 87 | 764 |
| 88 | 286 |
| 88 | 537 |
| 87 | 691 |
| 89 | 827 |
| 87 | 691 |
| 90 | 697 |
| 87 | 691 |
| 91 | 171 |
| 87 | 691 |
| 92 | 711 |
| 93 | 636 |
| 87 | 691 |
| 95 | 678 |
| 87 | 691 |
| 102 | 260 |
| 102 | 773 |
| 87 | 691 |
| 104 | 21 |
| 104 | 23 |
| 104 | 479 |
| 87 | 691 |
| 106 | 128 |
| 87 | 691 |
| 107 | 42 |
| 107 | 737 |
| 87 | 691 |
| 115 | 93 |
| 115 | 155 |
| 87 | 691 |
| 118 | 851 |
| 87 | 691 |
| 120 | 790 |
| 87 | 691 |
| 122 | 546 |
| 122 | 562 |
| 123 | 89 |
| 123 | 702 |
| 87 | 691 |
| 125 | 800 |
| 87 | 691 |
| 127 | 116 |
| 127 | 197 |
| f 127 | 322 |
| d128 | 40 |
| 87 | 691 |
| f129 | 715 |
| 129 | 716 |

6. Enough to amend by in matter of substance, in aid of an incomplete cause of action, is the least amount of substance in a declaration which will serve to show that, according to the original design of the pleader, what is offered to be added rightly belongs to the cause of action which he meant to assert, and that the addition proposed would make the cause of action complete. There must be a plaintiff, a defendant, jurisdiction of the court, and facts enough to indicate and identify some particular cause of action as the one intended to be declared upon, so as to enable the court to determine whether the facts proposed to be introduced by the amendment are part and parcel of that same cause. Any amendment whatever which, if allowed, would leave the cause of action incomplete should be rejected.

7. Under the code, a declaration which has all the requisites to make it good and sufficient in substance, save that it omits to allege some fact essential to raise the duty involved in the cause of action which the pleader evidently intended to declare upon, is amendable by supplying the omitted fact at any stage of the case. • Thus, where the duty claimed was the duty of forbearing to obstruct a sewer-pipe which conveyed waste-water from the plaintiff's premises and discharged the same on the defendant's land, the declaration was amendable by alleging an easement subjecting his land to the burden of receiving the water so discharged. Also, in an action by a mother suing for the homicide of her son, where the fact omitted from the declaration was that she was dependent upon him for a support, the declaration was amendable by alleging that fact.

8. Where two railway companies, each under its own franchise, use the track of one of them in common, at a terminal point, the one owning the track is responsible for the consequences of its negligence in failing to render harmless to the employees of the other company a low bridge spanning the track, if the duty of taking proper precautions for that purpose was upon it and it alone. The mother of an employee of the other company, if otherwise in a situation to sue, may recover for the homicide of her son, caused by such negligence. In such case, though it be not alleged that the company not owning the track (that is, the master of the employee) was ignorant of the danger or of the conditions which caused it, it will not be assumed in deciding upon a demurrer to the declaration that it was negligent in running the train to which the employee was attached when injured; consequently, the question whether any negligence of that company could be imputed to the employee so as to render him chargeable with contributory negligence is not now for decision.

October 19, 1891.   Argued and reargued at the last term.

*Stare decisis.* Amendment. Railroads. Negligence. Parent and child. Master and servant. Before Judge

Marshall J. Clarke.  Fulton superior court.  September term, 1890.

The action was by Mrs. Ellison against the Georgia Railroad and Banking Company, and the declaration alleged, in substance, as follows:  On the 21st of December, 1887, Morgan Ellison, her son, seventeen years old, without either wife or child, and who contributed to her support, was in the employment of the Central Railroad & Banking Company as a train-hand, and on the night of that day, in the proper exercise of his duties, was riding on the top of a freight-train of the Central railroad on the track of the Georgia railroad, and was in his proper place on the train where he had been ordered to go by the conductor of the train.  While the train was passing under a bridge at a crossing over the Georgia railroad-track of a street in Atlanta, her son was knocked off the train by the bridge and killed. At the time of the accident he was rightfully and legally upon the right of way of the Georgia railroad and with the consent of the defendant, and the Central railroad was rightfully using the track of the Georgia for shifting its trains within the city, by virtue of an arrangement between the two railroad companies that the Central should so use the track and other tracks of the Georgia for such purposes, and the same was done with the license, knowledge, permission and consent of the Georgia, and in accordance with a long standing custom so to do.  The train in question went upon the track of the Georgia for the purpose of transferring freight-cars from the Central's track to a point in the city on the track of the Georgia.  The night was extremely dark and her son entirely unable to see the bridge ; and it was windy and cold, and defendant was negligent in that it had placed no lights or other signals at or near the bridge as, according to reason and prudence, it should have done.  It knew that the bridge

was a death-trap, having been put on notice of this by numerous and frequent accidents; it had recognized and acknowledged it to be such, and yet maintained this death-trap and suffered it to be over its track. Defendant knowing the bridge to be very dangerous, and acting under the advice of its regularly employed physician, had put up signals in the shape of ropes hanging from beams, about fifty yards on each side of the bridge, to prevent accidents; but defendant was negligent in that these ropes on the night of the accident were entirely gone or out of order and did not strike her son, defendant having allowed the ropes to rot down or be pulled off, or become wrapped around the beams. Defendant was negligent in allowing so low a bridge to be over its track, for the bridge was only three feet and nine inches above the tops of ordinary cars of defendant and the Central Railroad Company, and a much smaller distance sometimes. Defendant was negligent in that it allowed pieces of timber to dangerously project downward from the bottom of the bridge over the track, and thus increase the danger to persons on the tops of cars passing under the bridge. Defendant owed a duty to her son and to the Central Railroad Company to furnish them a safe track and proper bridges, signals, warnings, etc., and her son was, as to defendant, a passenger, and defendant owed him extraordinary diligence, and is liable for his homicide as for that of a passenger. He was free from fault and in no way contributed to the bringing about of the homicide, which was entirely due to the negligence and default of defendant and its servants. He did not know of the danger, having been employed by the Central Railroad Company only one day before the accident and not being acquainted with the condition of the bridge and the absence of signals, and at the time in question he presumed and believed that the signal ropes were in good

order, and as those over all other tracks of defendant and other railroads at that bridge were, and expected them to strike him as he passed them and warn him to lie flat on the car. At the time of his death he was earning a sum stated and had good prospects for increasing his earnings, and his wages went to the petitioner's support.

The defendant demurred generally to the declaration, and in support of the demurrer insisted: (1) That upon the facts stated in the declaration it appeared that plaintiff's son was, at the time of the injury, on the train and in the service of another railway company, and also on a track which, for the time being, was and is to be treated as the track of another railroad company, and using at the time the franchise, not of defendant but of another, a different and independent railroad company, over which train and its movements and the servants operating the same defendant exercised no control, and for which or any injury to plaintiff's son, under the facts stated, defendant is not responsible. (2) That the declaration failed to allege that plaintiff was dependent on her son. The court overruled the first ground, but sustained the second. Before the judgment sustaining it was signed, plaintiff offered an amendment alleging that she was dependent upon her son for support and that he contributed to her support, but defendant objected to this amendment on the ground that it added a new cause of action, and that there was no cause of action set out in the declaration to amend by. This objection the court sustained.

W. M. BRAY, E. M. MITCHELL and GLENN & SLATON, for plaintiff.

J. B. CUMMING, HILLYER & BROTHER and BRYAN CUMMING, for defendant.

BLECKLEY, Chief Justice.

1. Some courts live by correcting the errors of others

and adhering to their own. On these terms courts of final review hold their existence, or those of them which are strictly and exclusively courts of review, without any original jurisdiction, and with no direct function but to find fault or see that none can be found. With these exalted tribunals, who live only to judge the judges, the rule of *stare decisis* is not only a canon of the public good, but a law of self-preservation. At the peril of their lives they must discover error abroad and be discreetly blind to its commission at home. Were they as ready to correct themselves as others, they could no longer speak as absolute oracles of legal truth; the reason for their existence would disappear, and their destruction would speedily supervene. Nevertheless, without serious detriment to the public or peril to themselves, they can and do admit now and then, with cautious reserve, that they have made a mistake. Their rigid dogma of infallibility allows of this much relaxation in favor of truth unwittingly forsaken. Indeed, reversion to truth in some rare instances is highly necessary to their permanent well-being. Though it is a temporary degradation from the type of judicial perfection, it has to be endured to keep the type itself respectable. Minor errors, even if quite obvious, or important errors if their existence be fairly doubtful, may be adhered to and repeated indefinitely; but the only treatment for a great and glaring error affecting the current administration of justice in all courts of original jurisdiction, is to correct it. When an error of this magnitude and which moves in so wide an orbit competes with truth in the struggle for existence, the maxim for a supreme court, supreme in the majesty of duty as well as in the majesty of power, is not *Stare decisis*, but *Fiat justitia ruat cœlum*.

2. Scarcely any right of procedure is more important to suitors or more frequently called into exercise in

actual practice than that of amending their pleadings. Amendment is a resource against waste. In pleading, as in every other art, the philosophy of amendment, or of bettering the results of work imperfectly executed, is comprehended in the frank recognition of two things, both of which are made manifest by actual experience: the first is, that in the practice of any art, it is generally better to preserve what has been done, improving it, and taking some benefit from it, than to throw it away and begin over; the second is, that in the practice of any art, save by the most finished and accomplished experts, many errors and mistakes will be committed; some by reason of ignorance or other incompetency, some by reason of haste or carelessness, and some by reason of inherent difficulty and uncertainty as to what is exactly the right thing to do, the right manner of doing it, or the right materials to be used. Carried out consistently to its rational limits, the principle of amendment applies to both substance and form, and with quite as much force to the important as to the less important. No sensible builder discards what he has done and goes back to the first block and the first blow, unless he has utterly failed in his foundation. If he has used too much material, or not enough, or some of an improper kind, or has put together his materials or some of them informally or unskillfully, he corrects his mistake with the least sacrifice possible, and retains everything which he can render useful in completing the structure which he intended and endeavored to build. The law has all the wisdom and prudence of all the trades. When practicable, it will conserve its own work, the work of its magistrates and ministers, and that of suitors in its courts, and their counsel.

3. There never was a time when pleadings were not amendable. Both form and substance were amendable at common law—certainly so by leave of the court in

the exercise of its discretion in the early stages of the
suit.    To the English statutes of force in Georgia rela-
tive to disregarding or amending defects of form, passed
for the purpose of preventing the miscarriage of justice
in consequence of such defects, and found in Schley's
Digest, 196, 223, 231, 244, 326, were added by State
legislation the acts of 1799 and 1818. Cobb's Digest,
486, 488.    But as in England so with us the amend-
ment of substance was left chiefly to the discretion of
the court down to the passage of the act of 1854, save
that by a standing rule of the superior courts, after an
appeal was entered either party might amend at will.
2 *Kelly*, 466, Rule 5.    The act of 1854 took away from
the courts all discretion by expressly declaring both
species of amendment to be matter of right.    Acts
1853-4, p. 48.    This act was reproduced, almost *ver-
batim*, by the code, but with a *proviso* requiring "enough
to amend by," and with an added limitation forbidding
the introduction of new parties or a new cause of action.
Code, §§3479, 3480, 3482.    The three sections here
cited read thus: "All parties, whether plaintiffs or de-
fendants in the superior or other courts (except the
Supreme Court), whether at law or in equity, may, at
any stage of the cause, as matter of right, amend their
pleadings in all respects, whether in matter of form or
of substance, provided there is enough in the pleadings
to amend by."    "No amendment adding a new and
distinct cause of action, or new and distinct parties,
shall be allowed unless expressly provided for by law "
"In case the party applying for leave to amend the
pleadings or other proceedings shall have been guilty
of negligence in respect to the matter of amendment,
the court may compel him to pay his adversary the cost
of the proceedings for which he moves, and may force
reasonable and equitable terms upon him at discretion,
not touching the real merits of the cause in controversy."

It will be observed that the rule for amending at law is as broad as for amending in equity. Certainly courts of equity have always been liberal in allowing substantial amendments where facts additional to those alleged in the bill were needed to make a complete case for relief. Construing these provisions of the code, it has been directly decided in one case, on a state of facts presenting the point squarely for decision, and suggested or assumed in some other cases, that a plaintiff has no right to amend his declaration in matter of substance unless the declaration, as it stands, sets forth in substance a full and complete cause of action. Shall we abide by this construction or overrule it?

4. Relatively to the law of pleading, a cause of action is some particular legal duty of the defendant to the plaintiff, together with some definite breach of that duty which occasions loss or damage. Though it is the breach and not the duty itself which justifies the action or causes it to be brought, yet every breach involves a duty, and in order to make the breach appear, it is indispensable that the duty also should appear. In so far as the duty in question can be known to the court by taking notice of any matter of public law, its creation or origin need not be pleaded; but in so far as it derives its origin from any special state of facts, whether relating to persons, events, time, place, or anything whatsoever, the essential facts must be pleaded. Some negative duties, such as not to beat, wound, libel, etc., are practically universal, and no special facts are needed to occasion them to exist or to verify their existence. Under ordinary circumstances, the law treats them as permanent relations between any and every two persons. Such duties, until denied, are taken for granted; and consequently, in a suit for the breach of a duty of this class, the breach may be described and damage therefrom alleged, without more. But much

the larger number of duties arise under the law out of particular conditions or events, such as this or that contract, the ownership of this or that property, etc., etc. And very many of them cannot arise save between some person in general, on the one side, and a person of this or that class on the other. Frequently both parties must be of the same class, and not infrequently each must be of some class to which the other does not belong. In many cases of tort a proper classification of the parties respectively is all the pleading of specific facts which is requisite in order that the existence of the duty may appear, the law raising the duty being noticed judicially as soon as the parties are classified in the declaration; but in every case of contract, the fact of contract, or the facts from which it will be implied, must be alleged. It is hardly needful to say that every duty is attended with a correlative right. A cause of action may be defined from the standpoint of rights, with exactly the same result as when it is defined from the standpoint of duties. Thus the precise equivalent of the definition given above would be this: Relatively to the law of pleading, a cause of action is some particular legal right of the plaintiff against the defendant, together with some definite violation thereof which occasions loss or damage. It may be well to observe that the word "duty" is used throughout this opinion in its broad sense, as including every species of legal obligation between party and party; the sense referred to in Patterson on Railway Law, 386, citing Treatise on the Law of Negligence, by Robert Campbell, p. 12.

The outcome, under the law, of any state of facts whatever which will embrace a cause of action, may be expressed as follows, the first proposition affirming the duty, the second the breach, and the conclusion the right to recover: It was the defendant's legal

duty to the plaintiff to do so and so; (or not to do so and so, as the case may be): He did not do so and so; (or he did so and so, as the case may be), and thereby caused the plaintiff such and such loss or damage: Therefore the plaintiff is entitled to recover for the reparation of his loss or for his proper compensation in damages. The office of the declaration is to state or describe the material out of which, viewed in the light of the law applicable to the case, a logical syllabus like this can be constructed in advance of the trial, for justification by evidence when the trial takes place. Unless the plaintiff can and will allege beforehand that such material exists, no trial ought to be had, for it would be useless. The direct end both of pleading and verification, so far as the plaintiff is concerned, is to obtain a valid and final judgment. Substance and form are alike worthless unless, on the showing of the plaintiff himself, this result can be reached. He can verify no fact of substance unless his pleading covers it, and it is useless for him to verify anything unless he can verify all the facts which are necessary to enable him to recover. For this reason, his declaration must show on its face a cause of action: The business of the declaration is to tell what the plaintiff proposes to verify. The manner of telling it and the words and sentences employed in the story, together with all mere technical requisites, are form; the material facts told are substance. If the declaration is deficient by reason of the omission of any material fact whatever which is absolutely necessary to give it full and complete substance, it is not amendable *in form*. Why? The answer is conclusive,—the amendment would do no good; the declaration would still be fatally defective, and to obtain a valid judgment upon it would be no less impossible than before. To challenge form by a demurrer always directs attention to substance likewise, for every

special demurrer brings substance under review, and enables the party to take advantage of any substantial defect though the same be not specified. Hence it may be said that every special demurrer is also a general demurrer. Gould Pl. 435, chap. IX. §§19, 20; Stephen Pl. 141; 1 Chit. Pl. 664. Where defects of substance are urged and insisted upon, a special demurrer is not answered by bettering form. The true and correct test, therefore, of the right to amend in matter of form is completeness of a cause of action in all the essential elements of substance. The most perfect form without sufficient substance would be mere waste. To add waste to waste, more waste-work to that already done, would be to violate the fundamental principle on which the privilege of amendment is founded.

5. But is the same quantitative test applicable to the amendment of substance? This court has decided that it is. Can we, on solemn review, after hearing and re-hearing able and exhaustive argument, and after deliberate and protracted study of the question, adhere to that decision? We think not. What is "enough to amend by" in matter of substance will be shown under the next head of this opinion. For the present, the inquiry is not what the phrase "enough to amend by" truly means in its relation to substance, but whether this court has not gravely erred by adopting a construction which requires as much to amend by in matter of substance as in matter of form. Is it a true interpretation of the phrase "enough to amend by," to say that it always includes in its signification "enough to be good in substance without amendment"? Are these two expressions so nearly identical in meaning? It is impossible to study them with the slightest attention without seeing that they are not. The latter expression marks out the lowest measure of substance which will suffice to render a declaration amendable in matter of

form. Unless there is sufficient substance, no improvement of form would be of the least service to the declaration; it might as well have no substance as not enough. Deformity is of no consequence if the misshapen substance would be worthless after its deformity was corrected. The law never does a vain and idle thing, nor provides for having it done; the amendment of mere form is never in order unless the substance is complete. Form can wait until substance is made sufficient; or both may become good together, at the same time and by the same amendment or series of amendments. For the statute to say that a declaration is amendable in all respects provided there is enough in it to amend by, carries no implication or suggestion that enough to amend by in one respect is enough to amend by in every other respect. The true sense of the proviso requires us to take the words, "in all respects," distributively, and understand them as making proper allowance for the nature of the defect and the kind of amendment requisite for its cure, so that each respect may have its own proper measure of "enough." To be amendable at all, a declaration must contain some substance; how much we shall see hereafter. Unless it comes up to some rational standard, it is not amendable in any respect, whether in form or substance. But to make the standard as high for substantial as for formal amendments, would be to treat all declarations which are deficient in substance as not amendable for the sole reason that they stand in need of amendment. Is it supposable that any system of amendment deliberately devised would declare in one breath that in all respects, declarations are amendable in matter of substance if they contain enough to amend by, and in the next, that unless they contain enough to be good in substance without amendment, there is not enough to amend by? Is no declaration which is not good in substance amendable

in matter of substance? Must it first appear that no
amendment is necessary, before any can be received? If
the action cannot be maintained without it, must the
amendment be rejected for that reason? Who would
imagine that the test of a sufficient declaration and of
an amendable declaration would ever come to be the
same, under the liberal law of amendment embraced in
the code? The rule of the code is that at any stage of
the case, every declaration is amendable in substance in
all respects, provided there is already in it enough to
amend by. The construction we are combating holds
this to mean that if a declaration lacks any part of a
cause of action, that is, anything which is necessary
to make up enough substance to resist a general de-
murrer, it lacks having enough to amend by, and is not
amendable. It holds, in effect, that a general demurrer
is not to be "spoiled" by putting more substance into a
declaration, but only by taking some out when it has
an excess. You may empty by one half if the declara-
tion is too full; but if it is half empty you can never fill
it. Nay, if it lacks anything whatever of being full,
what it wants can never be supplied, though the means
of supply may exist in abundant measure. Under this
singular construction, a declaration too strong in sub-
stance, as, for instance, if it sets forth two causes of
action which cannot be joined because one originated
in tort, the other in contract, may be weakened down;
but if it is too weak already, it cannot be strengthened.
A declaration may take an emetic, but not more food.
Curative treatment is restricted to depletion; all tonics
are prohibited. We are reminded of that tender regard
for a demurrer insinuated from the bench nearly two
hundred years ago, in Fox v. Wilbraham, 1 Ld. Raym.
668, Lord Holt saying, "It would be hard to spoil the
defendant's demurrer." But is not a general demurrer
too diabolical to have any claim upon modern emotion?

Stated in the most partial terms, its merits would seem to stand thus: "Demurrer is the only legal devil always present and always ready; every logical universe requires one such character; some destructive work has to be done; and how can it be done if there is only resistance, no co-operation, not even sympathy?" But the spirit of modern procedure is altogether constructive and conservative, and though it gives the devil his due it takes care to restrict his dues as much as possible.

Any declaration is amendable in all respects provided it contains enough to amend by in all respects. If it contains enough to amend by in any one respect, it is amendable in that respect, though it may lack enough to amend by in some other. If it does not contain enough to amend by in respect to form, it may be amendable in respect to substance, and will be whenever, it contains enough to amend by in respect to substance. In two general respects touching substance may a declaration be defective and stand in need of amendment. It may be defective in respect to the quantity of substance or in respect to the substantial particulars entering into that quantity. A defect of quantity may be in respect of deficiency or in respect of excess,—there may be too little or too much. In either of these respects a declaration is amendable, in the one equally with the other. In respect to particulars, also, the declaration is amendable whenever it is already sufficient in quantity, or when it becomes sufficient by adding the particulars brought in by the amendment. But whether the question be on form or substance, and whether on quantity or particulars, the amendment is to be allowed if the declaration has in it enough to amend by in respect to the nature and contents of the amendment offered, but not otherwise. That the declaration is amendable in one respect is of itself no warrant for amending it in another. The particular respect to which the proposed

amendment appertains is the one to be regarded, and others are material only as they throw light on that in its relation to the question of enough to amend by. A declaration which is amendable in form is always amendable in substance; and one not full enough to be amendable in form may be amendable in substance, and when made full enough, will be amendable in form also. Substance and form may both be perfected by one and the same amendment or series of amendments.

That the code does not confound all distinction between substance and form, nor make one and the same test of the amendable applicable to both, is so obvious that it could never have escaped our attention or that of our predecessors were it not that truth on the surface is often more difficult to discern than if it lay deeper. Sometimes it is more out of sight at the top of the well than at the bottom. The very brightness of the light which shines upon it serves to conceal it.

The case of *Martin* v. *The Gainesville, J. & S. Railroad*, 78 *Ga.* 307, is overruled; and so is any and every other case, in so far as the judgment of affirmance or reversal rests upon the construction herein reviewed and disapproved. This repudiates for the court as now constituted much that has been said *arguendo* by a single justice in writing out opinions, but probably very little, if any, save as to the case here mentioned by name, which has been actually and necessarily adjudicated. A careful examination of each case in the light of its facts will usually reconcile the judgment with the principles of this opinion.

6. Having freed the court from its own misconstruction of the code in relation to the amendment of substance, we are now ready for a new and true construction. And to find it is one of those difficult easy things which so frequently present themselves in the law. When the right point of view is discovered, the problem

is more than half solved. With reference to deficient
substance, enough to amend by in substance is some-
thing incomplete in substance, something less than
enough to be good in and of itself, something that
would not be good without amendment. The object
of amending it is to make it good. Some "enough"
which is not good, and another "enough" to make it
good, put together, would accomplish the object. The
problem is, from two quantities, one given in the
declaration, the other in the law as an ultimate stand-
ard, to ascertain a third which will represent the exact
difference between them. The solution will determine
what amendment is needed; and there is enough to
amend by if that particular amendment is offered,
but not enough if any other is offered. In every
suit there must be three classes of substance: parties,
subject-matter and jurisdiction. By express provis-
ion of the code, §3488, the facts necessary to show
jurisdiction may be brought into the declaration by
amendment; so that enough to amend by in respect to
this class of substance is the mere presence of the other
two classes in their minimum quantity. A declaration
having parties and a subject-matter is amendable so as
to show that the court has jurisdiction over both.
Parties cannot be supplied without express permission
of law (Code, §3480), and there is no such permission,
save in some cases for increasing the number, or in some
other cases for the substitution of one plaintiff for
another. In every action *in personam*, there must be
at least one plaintiff and one defendant to start with.
Without these there is no case, and nothing to amend
by in any respect. Neither is there any permission of
law for supplying the declaration with a subject-matter.
The declaration must contain enough from the begin-
ning to indicate a subject-matter for adjudication, and
to classify it as tort, contract, or something over which

the court has jurisdiction.  But the subject-matter need not, as first described in the declaration, be a complete cause of action, though it must be some kind of subject-matter of which a cause of action, if fully developed, would or might consist.  And it must go further than this; the declaration must enable the court to see both the terms of comparison to be used in ascertaining the exact difference between what is in it and what would under the law be good.  With both these terms the amendment offered must be compared, and if it would fill the gap, there is, so far as mere quantity is concerned, enough to amend by; otherwise there is not. The declaration must show what the design of the pleader was, and that his design was such that, if filled out and completed, a cause of action might appear. But in looking for his design by the light of the imperfect declaration, no test of full certainty, but only the test of probability, is to be applied.  If enough is alleged to render it fairly and reasonably probable that the plaintiff claimed to have a cause of action of the kind indicated, and that it was his design or that of his pleader to declare upon it, this probability is to be accepted for the purpose of allowing amendment just as though his design were known with full certainty.  For it is only when a party stops pleading and stands upon the result that certainty is the guide and measure of construction.  So long as he proposes to amend, he is still endeavoring to plead, and if he reaches the requisite certainty by the amendment and the original pleading together, he will be excused for any want of certainty before, higher than that of reasonable probability. When the declaration is indistinct, some light in aid of its own may be derived from the nature and contents of the amendment offered.  The contents of the amendment as compared with what is already in the declaration may tend to show, either that the plaintiff is

endeavoring to follow up a cause of action, or supposed cause, which he had in view when the declaration was prepared and filed, or, that having since discovered that no such cause exists or is maintainable, he has concluded to shift his ground and bring in surreptitiously a new and distinct cause of action in violation of one of the limitations upon his right to amend. In consequence of this limitation, the one which excludes any new cause of action, a test of quality is added to that of quantity; it is requisite that, in order to have enough in his declaration to amend by in respect to the cause of action, the plaintiff must go still further than to indicate a subject-matter and some cause of action of a particular kind; his declaration must indicate what particular individual cause of action the design of the suit embraces. And to render the amendment offered admissible, it must contain not merely the quantity and general quality of matter requisite to fill out the declaration, but its matter must be the residue of the identical cause of action of which a part is already described in the declaration. The identity may be disclosed through the duty element alone, or through the breach element alone, or partly through each. Some transaction must be indicated, and some particular duty and breach in respect to that transaction must apparently be asserted by the declaration, and must be shown to exist by the amendment. If the plaintiff has two causes of action of the same class, though the same facts may, in part, be common to both of them, he is not allowed to declare upon one and afterwards abandon it and substitute the other by amendment. And this is so whether he has made his declaration perfect as to the one covered by his original design, or left it imperfect. - He must abide by his design, and in order that the court may see that he does abide by it, he must disclose it in the first instance; not, as

we have already said, with certainty, but with reasonable probability. Any cause of action whatever would be new and distinct if no trace of it could be found in the declaration. There must be some trace of a particular cause of action in the declaration, in order that it may contain enough to amend by. And as the original cause must be adhered to, and no other substituted in its place, the trace furnished must be sufficiently plain and distinct to identify the particular cause of action to which the declaration points or refers. If it points to no one cause more than to any other, it will be too indefinite, and should be treated as nothing better than a blank. As a cause of action consists of duty and breach, these two questions should be asked and answered in the joint light of the declaration and the proposed amendment: Did the design of the pleader embrace a real duty and breach, or only something which he supposed by mistake of law to be such? If real and not merely supposed, what particular duty and breach did he intend to declare upon? The correct answer to these questions will govern his right to amend in the given instance. No right to amend in aid of a fanciful design, or of a true design which cannot be definitely ascertained, exists. An example of a fanciful duty and breach would be the supposed legal duty of the defendant not to kill the plaintiff's infant child, and a breach by killing it. This, as between party and party, would be a moral, not a legal duty, and the breach of it would be no cause of action. *Allen* v. *Street R. R.*, 54 *Ga.* 503. An example of a real duty and breach would be the duty of not depriving the plaintiff of the services of his minor child able to render service, and the breach of that duty by wounding such child so that he died. This would be a cause of action. *Chick* v. *Railroad Co.*, 57 *Ga.* 357. In order to understand clearly why, on principle, a cause of action not completely set forth

but merely indicated or suggested in a declaration may
be brought fully within it by amendment, it should be
noticed that a cause of action, being compounded of
duty and breach, is not, like plaintiff or defendant, a
simple indivisible unit without parts, but that it consists
of parts, some of which may by description be in the
declaration and others out. The declaration may, there-
fore, lay hold upon it, as it were, by one or more of its
parts, and this hold may serve, with the aid of a proper
amendment, for drawing in a description of the entire
body. Every proposition to amend by adding to an in-
complete cause of action is, in reality, only a proposi-
tion to add descriptive matter enough to finish an incom-
plete description; and it involves a comparison of what
is already within the declaration with what is sought to
be brought in. Nothing can be admitted from the out-
side unless, on comparison, it matches with something
inside and goes to make up the identical organism to
which they both belong. There is no actual disruption
or dismemberment of the cause of action by failing to
describe it all at first, but the process which takes place in
amending the description may be conceived of as one of
restoration and reconstruction, much like that conducted
by a zoölogist when, from a few bones, or perhaps a single
one, he draws or describes the whole skeleton. There
is this difference, however : the zoölogist undertakes
only to find an individual which will represent the
species to which the specimen belongs, whereas recon-
struction by amendment must result in covering with
the declaration as amended the identical individual
case embraced originally in the design of the pleader,
and of which each essential fragment of the restored
whole formed a part. If the original design of the
pleader, carried out in full, would embrace no cause of
action, the declaration is not amendable. That which
would be no cause of action when fully stated has no

parts of any cause. A legal nonentity is as destitute of parts as of wholeness. When a cause of action appears in the declaration, that, and that only, is the one which the pleader is supposed to have designed. When none appears, the design is to be sought in the light of what is alleged in the declaration compared with what is alleged in the proposed amendment. If the two sets of allegations harmonize so as to be parts of one and the same sufficient design, and so as to fill out that design and render it as complete on paper as the law requires it to be, the amendment is germane and must be allowed. In looking for the design of the pleader, he is to be judged by his work, not by his testimony. The search is for something outside of the pleading, at least, not wholly inside of it; but in conducting the search, the court must look through the pleading itself, so far as completed, and through that which is offered by way of amendment for making it complete. Through these alone the search must be carried on, in the light of the law, and with the aid of common sense and sound inference according to probability. The pleader is a builder who has a right to go on and finish from any beginning whatever, provided he can show his original plan by what he has done and what he proposes to do, and provided he will confine himself to that plan, and provided the plan is one which, when fully executed, will result in a real edifice and not a mere castle in the air. Anything is a castle in the air which lacks the support of a complete cause of action in the plan of it as that plan would appear if all of it were finally registered in the declaration. The plan is to be considered as fully formed before any of it was registered; and amending the declaration is simply completing the registry, no substantial change of plan being allowable. The builder must construct at least a slight foundation, using proper materials, and go far enough in the devel-

opment of his plan to show not merely the kind of structure, but the particular edifice he designed to erect; then he may go on and complete it. But he will not be allowed to reject either his foundation or his plan and substitute another. He may repair the foundation or vary the plan in some of its particulars, but must preserve the identity of both. The outcome must be the identical edifice designed in the beginning, and not substantially a different one. To amend substance in respect to the cause of action, there must be within the declaration a substantial part of some particular cause of action. It will not suffice to have a part which identifies only a given class of cases; there must be complete differentiation, not with full certainty, but with fair probability. There must be means of identifying the particular individual cause, so as to adhere to one and the same cause and guard against the substitution of any other in its place. What proportion of the whole substance will suffice for individualizing the particular cause of action embraced in the pleader's design is not a fixed quantity. It is variable, and in one instance will be more, in another less. A few characteristic fragments might serve the purpose, or it might require a considerable number. If we could be sure that only a single fragment is inside, and if, by it, the rest could all be identified, they might be brought in. However numerous the fragments, if they can each be recognized as belonging to one and the same whole, they may be recombined. It is needful to observe further, that in order to render appropriate any particular amendment or series of amendments offered to complete substance, it must not stop with partial completion, but must contain all that is necessary to make the cause of action full and entire in the amended statement, when read in connection with the original declaration. Nothing is enough to amend by when the cause of action is

incomplete, if the amendment offered would not complete it. Merely improving substance without making it good, or increasing it without adding enough, has no value. When nothing less than four can win, one is equal to three, for each of them counts for naught. Waste will not be added to waste in amending substance, any more than by amending form to no purpose. An amendment which don't amend is not better, but somewhat worse, than none. ·

From what has been said, it is apparent that nothing less is enough to amend by in matter of substance in respect to the cause of ·action than a plaintiff, a defendant, jurisdiction of the court, and facts enough to indicate and identify some particular cause of action as the one intended to be declared upon, so as to enable the court to determine whether the facts proposed to be introduced by the amendment are part and parcel of that same cause ; and that when all these elements are in the declaration, there is enough to amend by. The least amount of substance in a declaration which will serve to show that what is offered to be added rightly belongs there, is enough to amend by if the addition proposed would make the cause of action complete. On the other hand, there is not enough to amend by if what is already in will not suffice to identify the newcoming matter as rightly belonging there, or if receiving the latter would not make the cause of action complete, but would leave it still incomplete. The test here proposed would apply in principle to all pleadings with reference to the amendment of substance. See that the newcomer would be at home in the pleading, and that with it admitted there would be no material absentee, and the question is settled.

It has been suggested that an incomplete cause of action has no life in it, and consequently, that a complete cause is necessary in order to render the declara-

tion amendable, a dead thing not being susceptible of any amendment whatever. But this begs the question. It assumes, by the use of a simile, that life or something analogous to it is necessary to a legal document which is used by the law as mere means to span the chasm between process and judgment; and it assumes that there is life in a cause of action when the whole of it is in the document, but not when less than the whole is in. The first assumption may be granted, but half of the second is unwarrantable. A cause of action, if alive at all, is alive all over; each fragment is living matter, and has neither more nor less vitality in consequence of being put in or left out of the declaration. The pleader does not slaughter his cause of action by the way he deals with it in pleading. In point of fact, pleading merely describes it, and failing to mention some of its parts is only omitting to tell the whole truth about it. It might as well be said that a man or an animal is killed by a deficient description. A cause of action is indestructible by any such means as incomplete description. On the contrary, it remains so absolutely alive that without the least change in itself, a proper supplement to the description will set the whole business right. Used merely for illustration, figures are often helpful, and the life simile may be helpfully employed in the present discussion. Amendment being a resource against waste, and waste in pleading being, according to common sense and sound economic principles, no more justifiable than waste in anything else, no pleading, especially no declaration (that on which the existence of the whole case depends), should be cast out as worthless if it can be saved by a fair and reasonable use of the amending power. That power neither creates nor raises from the dead; its function is neither generation nor resurrection, but is rather one of development, nutrition and

medication.   If the legal case which the pleader in-
tended to make has been so far developed and differ-
entiated in design that the court can recognize it as
probably fit to become a member of the case family,
though it may still be in the womb and deficient in
vigor or not fully developed in some of the essential
parts or organs which would enable it to live as an in-
dependent being, indeed, if it be little more than a mere
germ, the law has quickened it, and it is within the
reach of amendment.   Life, in the law of amendment,
means mere quickening, ante-natal life, that which is
sufficient to start with, though it may be much less
than is requisite to support existence against the most
feeble attack if the amending power be not invoked.
Altogether a different and higher measure of life is
contemplated in the law as a basis for amending form.
In order that form may be amended, there must be
vitality of substance sufficient to burst from the womb,
pass through all the stages of being until final judg-
ment is rendered, and endure perpetually in the judg-
ment itself.   The reason for this difference is, that
amendment of substance is capable of increasing vital-
ity and raising it to any required standard of vigor
and durability, whereas by amending form the quan-
tity of life is not varied, the whole of life being lodged
in substance, none of it in mere form.   Amendment of
substance aids a declaration to live and augment its
life, and not merely to exert the vital force which it
already possesses.

7. We are now ready to apply the doctrines of the
foregoing discussion, first to the case which we have
just overruled, and next to the case at bar.   The dec-
laration in the former sought to lay down this scheme of
action, or supply the materials for its construction :   It
was the defendant's legal duty to the plaintiff not to
obstruct a certain sewer-pipe which conveyed waste-

water from the plaintiff's premises and discharged the same on the defendant's land: The defendant did obstruct it, to the plaintiff's damage: Therefore, a right to recover, etc. It was manifest from the original declaration that this was the particular duty and the actual breach comprehended in the pleader's design. 78 *Ga.* 307. The breach was fully described, but the duty was apparently assumed to exist, for nothing from which it could be rightly inferred was alleged. By reason of this omission, no duty of forbearance to obstruct the pipe appeared, and consequently no cause of action was set forth, although a good and sufficient one was evidently embraced in the design of the pleader. He had a complete design; the duty and breach he intended to declare upon would, if they existed, constitute a real cause of action, and only one fact requisite to show their existence was omitted. By amendment in the court below, made in response to a demurrer, this omission was supplied; the plaintiff pleaded an easement subjecting the defendant's land to the burden of receiving the water discharged from the pipe. The moment this fact was added to what the declaration already contained, a complete cause of action was stated. But this court held that it was error to allow the amendment, the declaration not being amendable for the reason that no cause of action was set forth at first. We have already seen that this reason was the very one why the declaration should have been amended, because but for it no amendment would have been needed. And there was certainly enough to amend by, even if we are to attribute to the pleader the absurd intention of treating it as the legal duty of one man to allow another at will and without permission to conduct his waste-water to his premises in an artificial drain and discharge it thereon. If it was the pleader's real purpose to propound this theory of a legal duty, we could still be in

no doubt as to what duty he meant to assert and insist
upon. It seems much more probable, however, that he
intended to rely upon the easement which he after-
wards alleged by way of amendment, and that on ac-
count of inadvertence, haste or carelessness, he failed
to plead it in the beginning. It was apparently very
gross negligence not to plead it, but the right to amend
given by statute is not lost by any negligence whatever.
The court may, by virtue of section 3482 of the code,
impose terms upon its exercise, but cannot for any
reason wholly deny the right to amend if there is enough
in the declaration to amend by. No false theory of the
pleader as to what facts will suffice to raise the duty
covered by his design will count against the right to
amend, provided the design itself is disclosed and is one
which, when filled out by all the necessary facts, will
embrace a cause of action, the identical cause on which
the suit was commenced. If the plaintiff really has
the identical cause of action which he has endeav-
ored to plead, why should the mistake of his pleader in
leaving out one of its necessary constituents, because
he supposed it need not go in, be any bar to amending?
Is not the chief object of amendment the correction of
mistakes? Mistakes occasioned by error of judgment
or opinion are quite as open to correction as any other.
Indeed, were counsel, of purpose and by intention, to
leave a declaration incomplete after so far developing
the design and the identity of his cause of action as to
furnish enough to amend by, he would not thereby for-
feit the statutory right of his client to amend. The
statute, except as a guide to the court in imposing
terms, cares not what occasions the amendment to be
needed. The right to amend is granted irrespective of
any and every consideration as to whether there was
fault or not in failing to have the pleading sufficient at
first.

In the case at bar, also, the declaration was ample, more than ample, in its supply of matter to amend by. Its theory of duty, breach and right to recover may be formulated thus : It was the defendant's duty to the plaintiff not to cause the death of her son by negligence : The defendant did by negligence cause his death, to the plaintiff's damage, etc. : Therefore, the right to recover, etc. The breach and the manner of it were set out with much particularity, and all the facts needful to raise the duty under the act of 1887 appeared, except the one fact that the plaintiff was dependent upon her son for support. Misled by the previous misconstruction of the code by this court, the presiding judge refused to allow the plaintiff to amend by supplying this omitted fact, the amendment being offered as soon as the judge announced his opinion in favor of sustaining the defendant's demurrer, and before any judgment to that effect was written out or entered. The statute giving the right of action to the mother in such cases was not pleaded or referred to in the declaration, but so full was the declaration that any one of average intelligence, whether learned in the law or not, on hearing it read in connection with the statute, could not fail to understand that the design of the pleader was to base his action on that statute. In administering the law of amendment, courts cannot afford to be less astute than ordinary bystanders who may happen to be present at their proceedings. We have no doubt that the able and learned judge who presided in this case well knew what duty of the defendant towards the plaintiff was meant to be asserted; and had he been at liberty to follow his own convictions as to the true law, it is very probable he would have allowed the amendment. This is the second instance in which we have been constrained to reverse him as a consequence of correcting a misleading decision of this court. His

willingness to abide by authority which ought to control him for the time being, is not the least conspicuous of his many judicial virtues.

8. The cross-bill of exceptions complains of error in not sustaining the demurrer on another ground in addition to that just considered. This ground asserts, in substance, that for the time being the track was that of the Central company, the emyloyer of the plaintiff's son, which company was using it under its own franchise, and therefore that the defendant was under no duty to a servant of the Central company. But according to the declaration, the track belonged to the defendant, and all duties relating either to it or to the bridge were its duties exclusively. It was the lord paramount, and was in possession and use of the track in common with its tenant or licensee, the other company. There is no hint in the declaration of any undertaking by the latter to keep either the track or the bridge in prope condition. On the contrary, it is alleged that the defendant owed to that company as well as to the plaintiff's son the duty of keeping the track and the bridge safe for use. In connection with this ground of demurrer, was urged in the argument the doctrine of imputed negligence, a doctrine which is of doubtful standing in the law, and which, if recognized, is to be cautiously applied. The application of it sought to be made here is this: According to the declaration, the plaintiff's son was in the employment, not of the defendant, but of the Central company; by some arrangement between the two companies, the latter acquired the right to run its trains over a portion of defendant's track in the city of Atlanta; the track was spanned by a bridge which it was the defendant's duty to keep lighted at night and in a safe condition, and the bridge being low, to keep ropes adjusted in proper position and at a proper elevation·so that persons on top of the cars approaching the bridge

would come in contact with the ropes and thus receive warning of danger in time to shun it by bowing down low enough to pass under the bridge without injury; the defendant was negligent in maintaining too low a bridge, in not lighting it at night, in allowing the ropes to decay or be out of place, and in not keeping them up so as to give the necessary warning; also, in allowing dangerous timbers to project from the bottom of the bridge downwards; in consequence of this negligence, of which the plaintiff's son was ignorant, he, during a dark night, while on top of a moving train of cars of the Central company, and engaged in the line of his duty, struck against the bridge and was killed.   There was no allegation that the Central company was ignorant of the defendant's negligence and the danger occasioned thereby, and the contention is that as there was no privity between the defendant and the plaintiff's son, the duty of the defendant in regard to the bridge and the ropes was not directly to him, but was to the Central company, and that if the latter company knew of the danger and nevertheless ran into it, this was contributory negligence by the master which is to be imputed to the servant who suffered or was killed by the joint negligence of the master and the defendant.   There is an answer to this contention dependent on the rules of pleading, which answer we shall make presently, but we may suggest in passing what might be said were that response not at hand.   One who engages with a master to furnish a safe way for the passage of the latter and his servants, and allows them to enter upon and use the way accordingly, is to be understood as holding it out to the servants, as well as to the master, as fit for safe use and as inviting the servants to use it in the due course of transacting the master's business.   This puts him in a relation of duty towards the servants no less direct than that which he bears to the master, but a

v 87-46

duty governed by the law of tort instead of the law of contract.   For the violation of this duty by which one of the servants is injured, it is no answer to say that the master aided in the violation, or was instrumental in causing injury to be sustained by reason thereof, or that he was negligent in not protecting the servant against the consequences of the defendant's negligence, if the defendant's negligence was in part the proximate cause of the injury.   The rule of our law (Code, §2972) is that if the person injured could, by the use of ordinary diligence, have protected himself against the consequences of the defendant's negligence, there can be no recovery; but, we apprehend, he is not to lose his action if some one else could have protected him and negligently failed to do it.   Far more reasonable would it be to treat both the negligent parties as wrong-doers, and make them both answerable for the result to which they mutually contributed, than to excuse one of them because the other also was at fault.   Be this as it may, there was no error in overruling this ground of demurrer to the plaintiff's declaration, because it does not appear that the Central company was negligent or at fault in any way whatever.   On the contrary, the death of the plaintiff's son is attributed in the declaration wholly to the negligence of the defendant.   If in this respect the declaration is not true, its want of truth is matter of defensive pleading by direct denial or otherwise.   The mere failure to allege that the Central company was ignorant of the danger or of the conditions which caused the danger is no warrant for assuming contributory negligence on the part of that company. Kentucky & I. B. Co. *v.* Hall, 125 Ind. 220, 25 N. E. Rep. 219; *Ga. Midland & Gulf R. R. Co.* v. *Evans,* 87 *Ga.* 673, 13 S. E. Rep. 580.

*Judgment reversed; on cross-bill of exceptions, affirmed.*

NOTE.—Authorities besides cases in the *Georgia Reports* which may be consulted in connection with the foregoing opinion :

Pleading at common law was originally *ore tenus* at the bar, and defects were cured *instanter*. 2 Reeves' Hist. Com. Law (ed. of 1880), 569. Afterwards, when they came to be written, either party could amend in form or substance, so long as the proceedings were in paper, that is before the record was made up. 1 Bac. Abr. 224 ; 2 Vin. Abr. 291 ; 1 Petersd. Abr. (503) *et seq.*; 1 Tidd's Pract. 694 *et seq.* ; 1 Harrison's Dig. 124 ; Mansel on Demurrer, 149 *et seq.*; "The Compleat Attorney and Solicitor," 309 *et seq.*; Anon., 1 Salk. 47 ; Anon., 2 *Id.* 520 ; Fortescue, 277 ; Bonfield *v.* Milner, 2 Burr. 1098 ; 1 Am. & Eng. Enc. Law, p. 546 ; Queen Mother *v.* The Inhabitants, Sid. 107.

It is not too late to amend the declaration after demurrer, joinder and argument. Taylor *v.* Bramble, Barnes, 6 ; Farmer *v.* Burton, *Id.* 9 ; Pool *v.* Hamerton, 2 Barnard. 65 ; Hardy *v.* Gilding, 3 Lev. 39 ; Jones *v.* Edwards, 3 M. & W. 218 ; Goodwin *v.* Hannah, 5 Strobh. 157. See King *v.* Ellams, Cas. *temp.* Hardw. 87, 2 Stra. 976 ; Anon., 2 Mod. 167 ; Queen *v.* Inhabitants, *supra;* 1 Bac. Abr. 226 ; 2 Vin. Abr. (317) ; 1 Petersd. Abr. (529) ; 1 Tidd's Pract. 709; 3 Chitty's Pract. 761.

Penal actions are amendable at common law the same as ordinary actions. 1 Tidd's Pract. 711 ; Rex *v.* Ellams, *supra;* Jones *v.* Edwards, *supra.*

Something to "amend by": 1 Tidd's Pract. 713 ; King *v.* Ellams, Hardw. 87 ; Woodman *v.* Inwen, Barnes, 9 ; *Giddens* v. *Mirk,* 4 *Ga.* 364; *Christian* v. *Penn,* 5 *Ga.* 482; *Ledsinger* v. *Central Line,* 75 *Ga.* 569; *Smets* v. *Weathersbee, R. M. Charl.* 537.

Declaration setting out no cause of action amendable. Skinner *v.* Grant, 12 Vt. 456 ; Pullen *v.* Hutchinson, 25 Me. 349 ; King *v.* Chicago Ry. Co., 79 Mo. 328 ; Manz *v.* St. Louis Ry. Co., 87 Mo. 278; Mo. Ry. *v.* Piper, 26 Kans. 58. But see Hobby *v.* Mead, 1 Day, 206.

Leave to amend : Creel *v.* Brown, 1 Rob. (Va.), 265; Strange *v.* Floyd, 9 Grat. 474 ; Trumbo *v.* Findley, 18 S. C. 305 ; Bischoff *v.* Bease, 20 S. C. 460 ; Miller *v.* Stark (S. C.), 7 S. E. Rep. 501 ; Stovall *v.* Bowers, 10

Humph. 560; Gammon v. Schmoll, 5 Taunt. 344. Not allowed after dismissal on general demurrer: Hart v. Bowie, 34 La. An. 323.

"Cause of action": Colby's Pract., p. 166 et seq.; 3 Am. & Eng. Ency. Law, 46; Petre v. Craft, 4 East, 433; Stevenson v. Mudgett, 10 N. H. 338; Merrill v. Russell, 12 N. H. 79; Cabarga v. Seeger, 17 Pa. St. 514; Jackson v. Spittall, L. R. 5 C. P. 522; Cooke v. Gill, 8 Id. 107; Durham v. Spence, L. R. 6 Ex. 46; Cherry v. Thompson, L. R. Q. B. 573; President v. R. R., 10 How. Pr. 1; Veader v. Baker, 83 N. Y. 160; Hill v. Smith, 34 Vt. 535; Rodgers v. Mutual End. Ass'n, 17 S. C. 410.

Amendment of bills in equity. Story's Eq. Pl. §883 et seq.; Mitford Pl. by Tyler, 309, 413, 418, 419; 1 Dan. Ch. Pr. 401 et seq.

Substance and form distinguished. Gould on Pl. 435 cap. ix, §18.