MARIETTA PAPER MFG. CO. *v.* BUSSEY & CARSWELL.

1. Though a petition alleged that a written instrument therein set forth was a perfect and complete contract for the sale of goods, and prayed for the recovery of damages for a breach thereof, there was no error in allowing an amendment to such petition, in effect averring that the instrument in question was an offer or proposal to sell to the plaintiffs the goods therein described, and that the same had been accepted in writing by them before its withdrawal.
2. The court did not err in overruling the demurrer to the plaintiffs' petition as amended. LITTLE, J., dissenting.

Argued February 14, — Decided July 19, 1898.

Complaint for damages. Before Judge Gober. Cobb superior court. March term, 1897.

*Clay & Blair*, for plaintiff in error.

LUMPKIN, P. J. Bussey & Carswell brought an action against the Marietta Paper Manufacturing Company, for damages for an alleged breach of a contract. The petition alleged: The plaintiffs entered into a written contract with the defendant, through its agent Heffernan, by which the defendant agreed to deliver to plaintiffs at once 500 bundles of ties at sixty-five cents per bundle, delivered at Augusta, Ga. The written agreement was as follows: "We, the Marietta Paper Manufacturing Company, agree to deliver to Bussey & Carswell 500 bundles of ties at 65 cts. per bundle, delivered at Augusta. [Signed] Marietta Paper Mfg. Co., Jno. Heffernan. 7/26/96." The defendant failed and refused to carry out its agreement or any part thereof, though requested so to do by plaintiffs. Said ties were to be delivered at once, so plaintiffs could have them for the fall trade of their customers. On July 30, 1896, plaintiffs asked F. W. Coffin, freight-agent at Augusta, to send the following telegram to defendant: "To Marietta Paper Co., Marietta, Ga.: When will ties for Bussey & Carswell move? [Signed] F. W. Coffin, 7/30/96." In reply to this telegram, which was duly received by the defendant, the following letter was written to said Coffin on the same day: "Marietta, Ga., 7/30/96. F. W. Coffin, Esq., S. Agt. Ga. R. Rd. Augusta, Ga. Dr. Sir: Answering your telegram of this date, we ship next Wednesday some of the ties for Bussey & Carswell; also some for Jack-

son & O'Connor. Yours truly, [Signed] Marietta Paper Mfg. Co., per Heffernan." Defendant has never delivered the said ties as it promised to do, or any part of the same. (The petition then set forth the damages alleged to have accrued from defendant's breach of its contract.)

The defendant demurred to the petition, as follows: "The allegations made by plaintiffs do not set forth any cause of action, or furnish any ground for recovery, against this defendant. It does not show any contract between plffs. and deft., nor does it show any breach of any contract by deft." Pending the argument upon the demurrer, the plaintiffs offered an amendment to their petition in the following words: "Petitioners allege that the contract made by the defendants July 26th, 1896, was accepted by the plaintiffs in writing, immediately after said paper was signed by defendant and delivered to plaintiffs; that plaintiffs' written acceptances were by letter and telegrams, written and sent by plaintiffs to defendants, and that said writings are now in the possession of defendants; that they allude specifically and fully to their agreeing to purchase 500 bundles of ties at 65 cents per bundle, and constituted a specific acceptance of the written offer made July 26th, 1896. That the said writings constituted such an acceptance as would fully bind plaintiffs, and was such as to enable defendants to fully enforce said contract. That said acceptances and telegrams were written by plaintiffs and delivered to defendants during the months of August, September, and October, 1896, and at other dates, the exact dates being now unknown to plaintiffs, said acceptances being in the possession of defendants; said acceptances being made and said contract fully made prior to bringing said suit. Plaintiffs further say that said written offer made by defendants July 26th, 1896, was never withdrawn by them before plaintiffs accepted the same in writing, neither have they ever withdrawn said offer, nor have they ever attempted to do so." The defendant objected to this amendment, "because it failed to set out the language of the alleged acceptances, the date when made, and because the same was insufficient in law." The amendment was allowed, and the defendant's demurrer overruled. It excepted, and in its bill of ex-

ceptions complains that the court erred in allowing the amendment to the petition and in overruling the demurrer.

In our opinion, neither of these rulings was erroneous. The amendment alleges a sufficient reason for not setting forth the "acceptances and telegrams" therein referred to, or stating their dates, viz., that the same were in the possession of the defendant. While it is true that the original petition treated the instrument therein set forth as evidencing a perfect and complete contract, and prayed for the recovery of damages for an alleged breach of the same, we think the amendment was allowable. The words of the written instrument are susceptible of two constructions, viz., the one placed upon it in the first instance, and that set forth in the amendment. Indeed, it would be perfectly fair to assume that the real object of the plaintiffs in setting forth the writing executed by Heffernan was merely to allege that it furnished the evidence of the contract relied upon. This being so, it would surely seem legitimate to permit the plaintiffs to make further allegations amplifying the petition in this respect and showing that there were other writings evidencing the existence of the contract entered into between themselves and the defendant. It is quite certain that the amendment referred to the identical transaction mentioned in the original petition, and it was manifestly the purpose of the pleader in the beginning to allege that the defendant company had made and had broken a valid contract whereby it sold to the plaintiffs a stated number of ties at a specified price. Under the doctrine of the *Ellison* case (87 *Ga.* 691), it was the right of the plaintiffs to complete and make perfect the structure which beyond question it was their intention at the outset to erect.

If the amendment was properly allowed, it can not be seriously doubted that the petition as amended stated a good case. Its allegations, taken all together, certainly alleged a complete and binding contract and a breach of the same, with resulting damages. On the whole, we think the trial judge properly concluded that enough was alleged to carry the case to the jury, and to warrant a verdict in favor of the plaintiffs in case they sustained their allegations by competent evidence.

*Judgment affirmed. All concurring, except Little, J.*

LITTLE, J., dissenting. .If, in contemplation of law, the instrument declared upon by the plaintiffs, taken in connection with subsequent writings between the parties as set out in the petition, as amended, constitutes, a valid and binding contract, the petition contained a good cause of action. If, on the other hand, there was no contract, then there could have been no breach, no damage, and the plaintiffs would have no cause of action. It is a fundamental principle, that, to constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject-matter upon which it can operate. Civil Code, § 3637. Under the allegations made in the petition, there appear to have been parties able to contract; there appears to have been a subject-matter upon which such agreement could operate, and the *defendant* appears to have assented to the terms of the contract. If, therefore, there was a consideration, all the essential elements to constitute a valid and binding contract would be found in the obligation to which the defendant subscribed. The alleged contract upon which the plaintiffs declared was of an executory character. If a contract at all, it was one in which something remained to be done by one or more of the parties. Civil Code, § 3662. An executory contract, without consideration, is a mere nudum pactum, and is not binding upon the party making the promise. Civil Code, § 3656. The allegations of the petition show that the plaintiffs parted with nothing as a consideration for the promise of the defendant; that at the time the promise was made the plaintiffs did nothing or undertook no act from which benefit accrued to the defendant, or any injury resulted to the plaintiffs. The doctrine is universally recognized, that mutual promises, or a promise for a promise, afford a sufficient consideration to support a contract. As was said, however, by this court, in the case of *Morrow* v. *Southern Express Co.*, 101 *Ga.* 810, "A promise is not a good consideration for a promise, unless there is an absolute mutuality of engagement, so that each party has the right at once to hold the other to a positive agreement. 1 Parsons on Contracts, * 449; 13 Ill. 140; 12 Barb. (N. Y.) 502; 6 B. & C. 255; 5 M. & W. 241; 9 Exchequer, 507; 12 How. 126; 6 Col. 89; 25 S. C. 136. And in case of mutual promises,

where the promise of one party is relied on as a consideration for the other, the promises must be concurrent and obligatory upon each at the same time, in order to render either binding. 18 Barb. (N. Y.) 317; 21 Wend. 139; 4 John. 235; 3 T. R. 653; Clark on Contracts, p. 166; Story on Contracts, § 569; 12 John. 397, 190; 40 N. J. Eq. 422."

At the time the alleged contract was made, so far as the allegations of the petition show, the plaintiffs in no manner bound themselves to take and pay for the ties. The instrument purported to be a contract from its inception. It did not undertake to embody an offer or proposal for acceptance or rejection by the plaintiffs. Not being a binding contract when made, by reason of its unilateral character, it was not within the power of the plaintiffs, by subsequent writings treating it as a contract binding upon them, or indeed by express promises to take and pay for the goods, to thereby render the alleged contract a binding obligation upon the defendant. Of course, although the original promise of the defendant was without consideration, if, upon subsequent promise made by the plaintiffs to take and pay for the goods, the defendant had expressly or by implication renewed its original promise, this would be equivalent to a new promise, and the promises would then be concurrent. . Clark on Contracts, p. 166. As has been said, the alleged contract could not be construed as an offer to sell goods, and therefore the law relating to offer and acceptance is not applicable. If the writings referred to by the plaintiffs in their amendment to the petition had embodied an absolute promise to take and pay for the goods, it does not appear that the defendant, either upon the receipt of such writings or at any time thereafter, renewed, expressly or otherwise, the original promise. Indeed its refusal to ship the goods is inconsistent with any such intention on its part. It follows, as I think, that the amendment seeking to construe the instrument as a mere proposal, and averring that such proposal had been accepted in writing by the plaintiffs before its withdrawal, was improperly allowed; and also that, inasmuch as the alleged contract declared upon was of no force and effect, the court erred in not sustaining the defendant's demurrer.