HILL, Circuit Judge,
dissenting:
Here it appears that Mr. Gimopoulos and Ms. Roberts have successfully attached more importance to a single piece of paper — a marriage license — than they have ever before. For quite some time they have dwelt under the same roof. They have bedded down together in the same bed. They have entertained then-mutual friends in the same dwelling.
Neither has another house or home. Neither has another house mate, roommate or bed mate. Neither do they have a marriage license.
The couple apparently felt that they did not need this single piece of paper in order to enjoy all the bliss of conjugal life. Nevertheless, they earnestly maintain that a marriage license vel non is now of great significance to the Continental Insurance Company.
The couple obtained legal counsel so that Mr. Gimopoulos could sue Ms. Roberts. Counsel for Ms. Roberts advised her to confess judgment in that action. In essence they undertake to “litigate by day and copulate by night, inter sese and pendente lite.” See Holt v. Holt, 77 F.2d 538, 540 (App.D.C.1935).
- In 1891, Chief Justice Logan Bleckley of the Georgia Supreme Court had for resolution before him what was then, a thorny problem, one hard to clearly “pin down.” As he began this difficult section of his opinion, he wrote: “When the right point of view is discovered, the problem is more than half solved.” Ellison v. Georgia R.R. & Banking Co., 87 Ga. 691, 13 S.E. 809, 813 (1891).
*1336 To discover the right point of view in this case we begin with the purpose of the limitation clause in the Continental policy. It intends to discourage collusive claims by persons in a close relationship with the insured. It limits coverage for any claim against the insured by any “family member.” The policy defines “family member” as “any member of the named insured’s household.”
Our panel complains that “household” is not sufficiently defined by Continental. So, in a burst of insurance policy draftsmanship, we undertake to define the term for the company.
Borrowing, from some dicta picked up and repeated in a couple of Florida district court of appeals cases, we announce that “household” may be ambiguous. Our panel majority opines that it could be limited to people sharing a dwelling — but its possible that these individuals must also be related by blood, marriage or adoption.
The majority accepts Continental’s assertion that “household” can mean “persons-living together, intending to form a social unit.” But the majority maintains that it could also mean that these persons must-be “related by blood, marriage or adoption.” Therefore they conclude that the term is ambiguous.
Dictionaries define “household” to include “a social unit comprised of those living together in the same dwelling place,” see Websters Third New International Dictionary (3d ed.1996), or “a domestic establishment including the members of a family and others living under the same roof,” see American Heritage Dictionary (6th ed.1976), or “a family living together or a group of people who dwell under the same roof.” See Black’s Law Dictionary (8th ed.2004). Black’s defines “family” as “a group of persons who live together and have a shared commitment to a domestic relationship.” Id. In my view the policy definition of “household” in this case correlates with its dictionary definitions. It is not ambiguous.
We all know that, in interpreting contract provisions, the intent of the parties is of first importance. 11 Williston on Contracts § 30:2 (4th ed.). We also all know that an ambiguous provision is construed against the drafter of the contract. Id. at § 32:12. However there must be real ambiguity present. It is not enough that two possible interpretations could be present. Id. at § 30:5. An ambiguity “does not exist merely because a contract can possibly be interpreted in more than one manner.” See Lawyers Title Ins. Corp. v. JDC (America) Corp., 52 F.3d 1575, 1580 (11th Cir.1995) (citations omitted).
For those persons living together, intending to form a social unit, does the addition of the words “related by blood, marriage or adoption” create an ambiguity? I think not.[1] The interpretation offered by Mr. Gimopoulos and Ms. Roberts is unreasonable.
I would reverse.
But, in all fairness, we really should not decide this case at all. Here we have a Florida contract involved in an insurance dispute in which Florida has a special interest. See McCarram-Ferguson Act, 15 *1337 U.S.C. § 1012(a). No federal interest is implicated.
We should certify this question to the Florida Supreme Court. It would not be an imposition on their time.

. For example, it excludes "significant others" who live together. There is no reason to exclude significant others when their inclusion supports the intent of the provision. Or, taking another example, if one of the couple who are living together has a child from a previous relationship, that is not adopted by the other, the child is in the household of its parent but not in the household of the parent in loco parentis. Neither would a foster child be a member of the household. A orphaned child "taken in" and reared by a couple would be a member of the household if dis-' tantly related to the parents but not if he or she was the child of a deceased close friend.