## 1844.  CHARLESTON AND WESTERN CAROLINA RAILWAY COMPANY *v.* DUCKWORTH.

1. In a suit by a shipper against a common carrier, to recover damages for the loss of freight burned up at the point of delivery to the carrier, an amendment changing the destination, from a point without to a point within the same State, does not introduce a new cause of action.
2. Where a petition alleges simply that the plaintiff delivered to the defendant—a common carrier—freight for transportation, and the defendant files a demurrer on the ground that the terms of the contract of shipment are not alleged, nor a copy thereof attached to the petition, the demurrer is properly overruled.
3. Where a judge gives in charge to the jury the general principles of law applicable to an issue in the case, a party who desires more specific and concrete instructions as to one of his contentions should make the request therefor in writing.
4. Errors in a charge are immaterial when the evidence demands a finding adverse to the complaining party.

Action for damages; from city court of Richmond county— Judge Eve.  April 5, 1909.

Submitted June 10, 1909.—Decided February 10, 1910.

*William K. Miller*, for plaintiff in error.

*Austin Branch, A. L. Franklin*, contra.

RUSSELL, J.  Duckworth sued the railway company for the loss of a lot of household goods.  In his original petition he alleged that the goods were delivered to the carrier in one State for transportation to a point in another State, and that they were destroyed by a fire which burned up the carrier's warehouse containing them.  The petition was amended at the trial by alleging that the goods were delivered to the carrier at Clark's Hill, S. C., to be transported to Calhoun Falls, S. C., and were burned up in the carrier's warehouse at Clark's Hill on the night following the afternoon of their delivery.  The defendant objected to the amendment on the ground that it set forth a new cause of action.  The court allowed the amendment over this objection, and also overruled certain special demurrers to the petition.  Exceptions pendente lite were preserved to these rulings.  The plaintiff recovered a verdict.  The defendant excepts to the refusal of a new trial, and also assigns error on the exceptions pendente lite.  The other material facts are stated in the opinion.

1.  It is argued that the amendment introduced a new and distinct cause of action, in that it set up an intrastate contract of carriage, whereas the original petition set up an interstate contract of carriage.  The cause of action set forth was the loss and destruction of the goods which had been delivered to the carrier and accepted by it for transportation.  The acceptance of the goods for transportation created the duty, and the destruction of the goods in course of transportation constituted the violation of that duty.  "Relatively to the law of pleading, a cause of action is some particular legal duty of the defendant to the plaintiff, together with some definite breach of that duty which occasions loss or damage." *Ellison* v. *Georgia R. Co.,* 87 *Ga.* 699 (13 S. E. 811).  The fact that the goods were accepted for transportation from A to B, or from A to C, would not change the cause of action growing out of a violation or breach of that duty by permitting the goods to be destroyed at A.  The destination was merely a collateral fact illustrating the duty and the breach.  If the plaintiff had been proceeding under some special statute applicable alone to interstate shipments, and not to intrastate shipments, the question might be different.  The cause of action set up in the instant case was a violation of the duty resting on a common carrier safely to carry and deliver freight accepted by it for transportation, the only excuse for a failure so to

do being the act of God or of the public enemy. This duty applies both to interstate and to intrastate shipments. There was no error in allowing the amendment over the objection urged. *Charleston & Western Carolina Ry. Co.* v. *Lyons*, 5 *Ga. App.* 668 (63 S. E. 862).

2. The defendant demurred to the petition on the ground that the terms of the contract of transportation were not alleged, nor a copy thereof attached to the petition. The petition alleged that the plaintiff delivered and the defendant accepted for transportation the goods in question. This was a sufficient allegation of a contract of carriage. It is not necessary that the contract be in writing, and, it not appearing from the petition that it was in writing, the demurrer on the ground that a copy was not attached is a speaking demurrer. There is likewise no merit in the ground that the petition fails to allege that the defendant was informed of the value of the goods at the time it accepted them for transportation. It is not necessary that the petition should make any such allegation. We have examined the other special demurrers and find no error in the action of the judge overruling them.

3. The undisputed evidence showed that the goods were delivered to the railroad in the afternoon, and the freight paid by the shipper, and a bill of lading issued, but not delivered to the shipper. The agent stated that the reason it was not delivered was that there were two or three quilts in the lot which the plaintiff wished to keep out overnight, to sleep on, that he was to return them the next morning, at which time, it was agreed, the bill of lading would be turned over to him. The plaintiff denied this, saying the entire shipment was delivered in the afternoon, and that he was in a hurry and intended to return next morning to take the train, and so just left the bill of lading with the agent, telling him that he would get it the next morning. The depot burned down during the night, the fire originating from some cause not known. The railroad company contended that there had been no final acceptance of the goods for transportation by it as a common carrier, and, if liable at all, it was liable only as a warehouseman. The judge charged the jury as follows: "The relation of shipper and carrier does not begin between the owner of goods and a railway company, though the former may have delivered the goods to the latter, if after such delivery anything required either by law or the contract remains to be done by the shipper; and in such case the rights and liabilities of

the company are those only of a warehouseman. So, gentlemen of the jury, you look to the evidence, and if you find that there was anything remaining to be done by the shipper, then the relation of carrier does not commence, and its liability is only that of a warehouseman." It is admitted that this is a correct statement of the principle of law, but the defendant complains that the judge erred in omitting to call specifically the attention of the jury to its defense that there had been no final acceptance of the goods, if the shipper kept out part of the shipment overnight as testified to by its agent. If the defendant desired more detailed and specific instructions, it should have submitted its requests in writing.

4. At the time of the delivery of the goods to the carrier, the agent testified that he told the shipper that there were two rates on goods of the kind delivered, one lower than the other where the goods were shipped released; that he explained to the shipper the difference between these two rates, and the result which would follow his acceptance of the lower or "released" rate; and that the shipper instructed him to ship the goods "released," and accordingly freight was paid on that basis. The plaintiff denied this, stating that nothing was said to him about two rates; that he simply asked the agent what the freight would be, and the agent told him, and he paid the amount named. The lower or "released" rate carried with it a limitation as to the value of the goods. In the rules of the railroad commission of South Carolina, introduced in evidence, it is provided as follows: "In all cases where limitation of value is expressed in the classification, it must be written out or stamped in full upon the bill of lading, and shippers must be required to accept in writing the limitations expressed. Agents must respect this rule and require acceptance by the shipper." The undisputed evidence showed that there had been no acceptance in writing of the contract limiting value, and the evidence therefore demanded a finding against the contention of the defendant to the effect that the plaintiff could not recover more than the limit of value expressed in the bill of lading. This finding being demanded, it is unnecessary to consider the assignments of error on the portions of the charge embodying the principles of law applicable to a case where there is evidence to authorize a finding in accordance with the contention of the complaining party.

*Judgment affirmed.*