### 3993. EVANS *v.* SOUTHERN RAILWAY COMPANY.

1. The rejected amendment merely amplified the allegations of the petition. It did not affect the substance of the case alleged, nor alter its nature in any respect. The amendment should have been allowed.

2. The court properly struck, on special demurrer, the allegations of subdivision "d" of paragraph 14 of the petition, but the ruling upon the general demurrer is controlled by the decisions of the Supreme Court in *Suber* v. *Georgia, Carolina & Northern Railway Co.,* 96 *Ga.* 42 (23 S. E. 387), and *Turley* v. *Atlanta, Knoxville & Northern Ry. Co.,* 127 *Ga.* 594 (56 S. E. 748, 8 L. R. A. (N. S.) 695), as well as by the ruling of this court in *Pierce* v. *Georgia Railroad Co.,* 9 *Ga. App.* 666 (72 S. E. 66). It can not be held, as a matter of law, that it is negligence to alight from a moving train, at or near a station at which it is the duty of a railroad company to bring its trains to a stop, unless it further appears that the danger attending the attempt to alight is

so great as to be obvious to any person of common prudence and ordinary intelligence. There was nothing in the allegations of the petition to take it out of the general rule that negligence is a question for the jury.

DECIDED FEBRUARY 18, 1913.

Action for damages; from city court of Forsyth—Judge Cabaniss. January 23, 1912.

The suit was for damages on account of personal injuries. The original petition made the following case: The plaintiff, at the time of his injury, was a passenger on the defendant's railroad. He had purchased a ticket at Macon for a station known as "Pope's Ferry," which was a regular stopping place. The conductor had taken up his ticket, and knew that he was to stop at Pope's Ferry. On approaching the station an employee cried out, "All out for Pope's Ferry," and upon this announcement the plaintiff got up and walked to the door and down on the steps of the car, preparatory to alighting. "The train slowed up, and, as petitioner thought it was about to stop," he "prepared to immediately step off, but before he could do so, the train increased its speed again, but of the extent to which the speed was increased petitioner was not aware at the time, and he therefore rushed down the steps and tried to alight." "At the time he undertook to alight he had already seen his daughter with a conveyance at the station for him, and, on the spur of the moment, thinking the train would not stop at all, he undertook to alight, believing he could do so without danger." "When he did undertake to alight, he was thrown across the side-track violently by the rapid speed of the train, and injured" in a manner described. The specific acts of negligence alleged are: (*a*) Failing "to stop said train at said station so as to allow the petitioner to alight therefrom with safety." (*b*) Refusing "to stop said train at said station so as to allow petitioner to alight in safety." (*c*) Failing to "slow up said train so as to allow petitioner to alight in safety." (*d*) Increasing the speed of the train while petitioner was attempting to alight therefrom, when the defendant's agents and employees thereon knew, or, in the exercise of ordinary care, should have known of this attempt.

To this petition a demurrer was filed, and the petition was amended by adding the allegations, that "said train slowed up as if to stop, but the said train did not stop, or if it stopped, it stopped only for an instant which was not perceptible to the plaintiff,"

and that the defendant was negligent in that the train did not stop "a sufficient length of time to allow the plaintiff to step from the same to the ground in safety." Upon the allowance of this amendment, the defendant renewed its demurrer to the petition, and the judge orally announced that he would sustain the demurrer and dismiss the case. On this announcement counsel for the plaintiff, before the signing of a judgment of dismissal, asked leave to offer an additional amendment, as follows: "That petitioner was on the steps at the time that he recognized that the train was not going to stop, or, if it had stopped, it had stopped only for an instant, a second or two, which was not a sufficient time for him to alight in safety, and that when he saw the train was going to the next station he went down to the bottom step as rapidly as he could go, and attempted to alight. Petitioner shows to the court that at the time he went down the steps the train was not running more than two miles an hour, and he thought he could alight without danger, and so undertook to do so. Petitioner further alleges that as he stepped off, the train increased its speed suddenly, and in stepping off he was injured as herein alleged." The amendment was rejected, and the court then rendered a judgment sustaining the demurrer to the petition; and the plaintiff excepted.

*R. L. Berner, Fletcher & Zellner,* for plaintiff.

*Harris & Harris,* for defendant.

RUSSELL, J. (After stating the facts.)

1. The rejection of the proposed amendment was in response to an oral demurrer that it was "inconsistent with the original petition." A comparison of the rejected amendment with the petition as amended convinces us that the judge erred in his conclusion. The substantial allegation of the amendment is, that if the train had stopped, it had stopped only an instant, or a second or two, which was not sufficient time for him to alight in safety; which is a statement practically identical with that contained in an amendment previously allowed,—that "when he saw the train was going to the next station he went down to the bottom step as rapidly as he could go, and attempted to alight." The original petition did not state where the petitioner was at the time he ascertained that the train had not stopped or was increasing its speed. It alleged that as the train was approaching the station, the petitioner started for the door, and that he did this to be ready to

alight as soon as the train should stop, but it did not state how far he went or where he stopped. The original petition further alleged that "the train slowed up, and, as petitioner thought it was about to stop, petitioner prepared to immediately step off, but before he could do so, the train increased its speed again, but of the extent to which the speed was increased petitioner was not aware at the time, and he therefore rushed down the steps and tried to alight." We think that as the original petition did not state where the petitioner was going at the time he started to the door, nor how far he actually went when he hurried down the steps, the statement that he attempted to alight from the bottom step was not only merely an amplification of his original allegation, but was perhaps necessary to prevent the inference that he might have jumped from the first or top step, and had thereby voluntarily exposed himself to a greater risk than would have been taken if he had alighted from the bottom step. As it appears from the original petition that the plaintiff did not himself know the speed of the train when his petition was originally filed, the averment of the amendment, to the effect that "at the time that he went down the steps the train was not running more than two miles an hour, and he thought that he could alight without danger, and so undertook to do so," was allowable. It is not inconsistent or unreasonable to suppose that the plaintiff has, since his petition was filed, discovered testimony by which he can establish the speed of the train at the time of his injury. Even if it should seem unreasonable to us that one could be injured by stepping from a train which is only running at a speed of two miles per hour, and improbable that an injury under such circumstances could be due to negligence on the part of the company, the jury, after all, is to determine this question from a consideration of all the circumstances in proof. The allegation of the amendment, that as the petitioner "stepped off, the train increased its speed suddenly, and in stepping off he was injured as herein alleged," may at first blush seem somewhat in conflict with the allegation on this point in paragraph 9 of the original petition, wherein it is averred that "when he did undertake to alight, he was thrown across the side-track violently by the rapid speed of the train, and injured as hereinafter set forth;" but when paragraph 9 is taken in connection with the charge of specific negligence, that the employees increased the speed of the train when the

petitioner was attempting to alight, the apparent conflict between the amendment and the petition is removed.

We have made this comparison between the original petition and the proposed amendment because the judgment of the learned trial judge was apparently based on the ground that the amendment was repugnant to the petition, and we can not concur in this view. But even if the conflicting allegations might be used against the plaintiff, or if he should be compelled to elect on the trial, they would not necessarily afford good ground for rejecting the amendment. *Ellison* v. *Georgia R. Co.*, 87 *Ga.* 691 (13 S: E. 809). The rejected amendment merely amplified the allegations of the petition. It did not affect the substance of the case, as originally alleged, nor alter its nature in any respect. The amendment did not come too late. It was physically offered "before any order or judgment . . had been entered; and, although the court had announced orally that the motion to dismiss was sustained, was in time." *Lytle* v. *DeVaughan*, 81 *Ga.* 226 (7 S. E. 781).

2. The real question in the case is whether the court can in any case adjudge that it is negligence for a passenger to jump from a moving train, and, if so, what must be the nature of the circumstances which will authorize the court to withdraw the question of negligence from the jury. In the opinion of the writer, the question as to whether the act of a passenger in jumping from a moving train is negligence is, in every case, primarily one for the jury. Of course, this allows the court, as a matter of law, to adjudge that in a case where the passenger jumped under circumstances of obvious rashness, a recovery by him can not stand; and this judgment would be affirmed on the theory on which a judgment directing a verdict is affirmed, to wit, that while it is an error, in the particular case it is harmless error. However, the Supreme Court has, we think, laid down a rule which can not be misunderstood, to the effect that it will not be held negligence per se for a passenger to alight from a moving train, unless the danger is obviously great; i. e., that the circumstances are such that the danger must be admitted by all persons of reasonable mind to be obvious. Under this rule, a judge is authorized to dismiss a petition where, from its allegations, it is apparent that all reasonable men would concur that it was so apparently dangerous for the passenger to have jumped from the train that he must be presumed to

have taken all the risks, and consequently could not look to the carrier as in any sense the cause of the injury which he received. It is true there is some apparent conflict in the rulings of the Supreme Court upon this subject, but, under the well-settled rule that the oldest decision controls, it is clear that we are controlled by the ruling of the Supreme Court in *Suber* v. *Georgia, Carolina & Northern Railroad Co.,* 96 *Ga.* 42 (23 S. E. 387), rather than the later decisions on which learned counsel for the defendant in error rely. Especially is this true since the ruling in *Simmons* v. *Seaboard Railway,* 120 *Ga.* 225 (47 S. E. 570, 1 Ann. Cas. 777), cited by counsel, was practically overruled in *Turley* v. *Atlanta, Knoxville & Northern Railroad Co.,* 127 *Ga.* 594 (56 S. E. 478, 8 L. R. A. (N. S.) 695). In the latter case Justice Beck quotes approvingly from the *Suber* case, supra, as follows: "It is not necessarily, as a matter of law, negligent for a person to leave a moving train. Whether it is negligent or not in a particular case must depend upon the circumstances of danger attending the act and the special justification which the person leaving the train had for doing so. Ordinarily, in cases of this kind, the question of what is or is not negligence is one for the jury; and unless the danger is obviously great,—as where the train is moving at full speed,—the court can not hold that leaving the train is, as a matter of law, such negligence as should preclude a recovery." And in the *Turley* case the court quotes from 3 Hutchinson on Carriers (3d ed.), 1377 (§ 1179), as follows: "The weight of modern authority seems to sustain the view that an attempt by the passenger to alight from a railway train while it is passing a place where it should stop to enable him to alight, or at which it has failed to stop a reasonable time to permit him to leave it, will not, as a matter of law, be considered a negligent act unless the attending circumstances so clearly show that he acted imprudently or rashly that reasonable minds could fairly arrive at no other conclusion, and that the question whether the act of the passenger in so attempting to alight from the train was negligent, that is, whether he exercised for his safety that degree of care and caution which a person of ordinary prudence would be expected under like circumstances to exercise, must ordinarily be submitted to the jury."

The present case is not affected by the ruling of the Supreme Court in *Louisville & Nashville Railroad Co.* v. *Edmondson,* 128

*Ga.* 478 (57 S. E. 877), because the present plaintiff alleges that he did not know the rate of speed, and his petition can not be construed as admitting that the train was running at a high rate of speed. In the case at bar the plaintiff knew that the train was slowing up as if to stop. Therefore it could not have been running at a high rate of speed. It may have stopped for an instant, but, if it did so, the period of time was so brief as to be practically imperceptible. It can not be said to be entirely unnatural that a man in the plaintiff's situation may not have detected the stoppage of the train, if it was only momentary or instantaneous, especially if it should appear that it was the custom of the railroad, in some instances, not to bring its trains to a complete stop at a mere flag-station if the passenger alighted before there was a complete stop, or as the train was about to come to a stop. According to the allegations of the petition the plaintiff thought he could alight in safety, and no reason appears why, ordinarily, he could not have done so. Under the circumstances as related by him, however, the train began to increase its speed just as he stepped from the bottom step of the car. This may be found by the jury to be the main contributing cause of his injury, the prime negligence which, in connection with the negligence of the company in not stopping the train although it knew that the station was his destination, caused the injury of which he complains. Certainly the allegation in the amendment as to the speed of the train sufficiently perfected the petition to enable it to withstand a general demurrer (*Augusta Southern Ry. Co.* v. *Snider,* 118 *Ga.* 146, 44 S. E. 1005; *Sanders* v. *Southern Railway Co.,* 107 *Ga.* 132, 32 S. E. 840); for the plaintiff alleges that "the train was not running more than two miles an hour." When it comes to the proof, the jury may conclude that it was not possible for the plaintiff to have been injured as he was by a train not running in excess of that speed; but the court can not say so. The petition as amended states a case not dissimilar to that with which we dealt in *Pierce* v. *Georgia R. Co.,* 9 *Ga. App.* 666 (72 S. E. 66). It can not be held, as a matter of law, that it is negligence to alight from a moving train at or near a station at which it is the duty of the railroad company to bring its trains to a stop, unless it further appears that the danger attending the attempt to alight is so great as to be obvious to any person of common prudence and ordinary intelligence. There was

nothing in the allegations of the petition in the present case to take it out of the general rule that negligence is a question for the jury.

The court properly sustained the general demurrer to subdivision "d" of paragraph 14 of the petition, in which it was sought to charge the defendant with wilful or wanton negligence. The plaintiff does not unequivocally allege that the agents of the defendant knew that the petitioner was attempting to alight at the time that they increased the speed of the train, and the qualification stated, that "in the exercise of ordinary care they should have known" that he was attempting to alight, is fatal to the charge of wilfulness and wantonness. One can not act wilfully or wantonly except when he acts knowingly.          *Judgment reversed.*