## 5903.   DABBS *v.* ROME RAILWAY & LIGHT COMPANY.

Construing the plaintiff's petition in accordance with the rule which requires the court, on demurrer, to adopt inferences adverse to the pleader, rather than to make assumptions in his favor, the petition does not state any reason that would have warranted him in attempting to alight from the car at the time and place of the injury. It does not appear that the conductor had better means than the plaintiff had of knowing that the car had not stopped; and therefore it does not appear why the failure of the conductor to warn him not to alight was negligence imputable to the defendant. So far as appears from the allegations of the petition, the car had not reached the plaintiff's intended destination, there was no emergency requiring him to leave the car, and he voluntarily assumed the risk of alighting from the car while it was in motion. Consequently the court did not err in sustaining the general demurrer and dismissing the petition.

DECIDED JULY 30, 1915.

Action for damages; from city court of Floyd county—Judge Reece. June 23, 1914.

*Harris & Harris,* for plaintiff.

*Dean & Dean, L. H. Covington,* for defendant.

RUSSELL, C. J.   The third and fourth paragraphs of the petition set forth the circumstances of the injury and the alleged negligence on the part of the defendant, and are as follows:  "3. That

defendant is engaged in the business of running cars propelled by electricity for the purpose of hauling passengers for hire. Its system of tracks is located partly in the city of Rome and partly beyond the city limits. On November 5, 1913, after sunset, petitioner boarded one of the defendant's cars at the corner of Avenue C and West Eleventh street and paid his car-fare to the conductor, stating that he wanted to go to South Rome. The conductor on the fourth-ward car received the fare from petitioner and gave him a transfer good for transportation on the car going to South Rome. Petitioner boarded the South Rome car at the transfer station on Broad street in said city, and went to the conductor on said South Rome car while the same was crossing the bridge over the Etowah river and handed him the transfer that he had received from the conductor on the initial car and stated to the conductor that he wanted to get off the car at Robert's stable, in South Rome, or fifth ward; that the conductor replied that the first stop beyond the bridge was where petitioner wanted to get off the car, and accordingly gave the proper signal (two bells) to the motorman to stop the car at the next regular stop for the cars, which was almost in front of Robert's stables, where petitioner wished to alight. The motorman failed and refused to obey the signal of the conductor, and failed and refused to slacken the car that petitioner might alight. Whereupon the conductor gave the motorman another signal by pulling the bell-cord, which rang the bell on the front end of the car, where the motorman stands. Petitioner in the meantime, thinking that the motorman would obey the signal of the conductor, had stepped on the steps of the car that are attached to the rear platform. The motorman proceeded to obey to a limited extent the second signal he had received from the conductor, and shut off current and was bringing said car to a stop. It was dark and petitioner could not see. The street is paved where the car was being stopped, and the rails are heavy, which makes the cars of defendant run easily and smoothly. Petitioner having notified the conductor that he wished to alight at this particular place, and the conductor having given the signal for the second time to the motorman to bring the car to a stop, and the motorman proceeding then to obey the conductor, this petitioner thought that said car had stopped, and alighted from said car." "4. It was dark when petitioner alighted from said car and he was not

aware that the car had not been brought to a standstill. The conductor of the car is in charge of same and gives the signal to the motorman when to stop and when to propel forward his car. The motorman is required to obey the signals of the conductor. The failure and refusal of the motorman to obey the signal of the conductor was negligence upon the part of the defendant and was the direct cause of the injuries suffered by petitioner, which will hereinafter be shown. Petitioner was not aware that said car had not been brought to a stop, and he would not have alighted from said car had he known the same was in motion. The motorman had ample opportunity to stop said car from the time the conductor signalled for the stop until petitioner alighted from same, and it was a breach of duty the defendant owed to petitioner as a passenger for a failure upon the part of the motorman to stop said car when signalled so to do. Petitioner had a right to expect and rely upon the motorman obeying the signal of the conductor to stop said car, and he did rely and expect him to stop same, and, as previously stated, he thought same had been brought to a stop when he alighted from same. On account of the darkness and the smooth running of the car petitioner was unaware that same was yet in motion. The conductor saw petitioner when he started to alight and did not warn him that the car was yet in motion. Such failure on the part of the conductor was a breach of duty defendant owed to petitioner, and was negligence that accentuated the cause that brought about petitioner's injury."

Construed in accordance with the rule that pleadings are to be construed most strongly against the pleader, the petition in effect alleges, that on the day named, after sunset, the petitioner boarded one of the defendant's cars and paid his fare, stating to the conductor that he wanted to go to South Rome. He was given a transfer, and at the transfer station boarded a South-Rome car. While the car was crossing the bridge over the Etowah river he handed the conductor his transfer and stated that he wanted to get off at Robert's stables, in South Rome. The conductor replied that the first stop beyond the bridge was where the petitioner wanted to get off the car, and gave the motorman the signal to stop the car at this place, which was almost in front of Robert's stables. The motorman, it is alleged, failed and refused to obey this signal of the conductor, and failed and refused to slacken the speed of the

car so that the petitioner might alight. The conductor gave the motorman another signal, by pulling the cord, which rang the bell on the front end of the car where the motorman stood, and, while the motorman was seeking to obey this second signal and was bringing the car to a stop, the petitioner, who had stepped on the steps of the car, alighted from the moving car and was injured. It is true that it is also alleged, that it was dark and that the petitioner could not see, and that the rails were so heavy and made the cars run so easily and smoothly that he thought the car had stopped, and that it was the duty of the conductor to warn the petitioner, when the conductor saw him starting to alight, that the car was yet in motion; and it is alleged that this failure to notify him was negligence on the part of the defendant; but it is not shown that the conductor had any better means than the passenger himself of knowing that the car had not stopped, nor is it stated that the first signal of two bells given by the conductor to the motorman was a signal to stop the car, rather than a means employed to warn or notify the motorman that the car was intended to stop when the next regular stop was actually reached. It plainly appears from the petition that the first signal was given while the car was still on the bridge; and certainly the plaintiff could not have understood that this point on the Etowah river was Robert's stable, his point of destination, which was on the opposite side of the river. It is therefore apparent that the plaintiff was not misled by the first signal given by the conductor. It is equally plain, from further allegations, that the conductor, on seeing the plaintiff arising from his seat, gave the proper signal for the car to stop, and that the plaintiff alighted from the car not only before it had stopped, but before it reached Robert's stable, the place of his destination; for it must be assumed that if the car had reached or had passed its regular stopping place, which the plaintiff intended and was told was the proper place for him to alight, that fact would have been stated.

We do not lose sight of the well-settled and salutary principle that questions of negligence and diligence are for determination exclusively by a jury; nor would we restrict in the slightest degree the rule, frequently announced (see *Evans* v. *Southern Railway Co.*, 12 *Ga. App.* 319, 77 S. E. 197), that it is a question of fact for the jury whether, under the particular circumstances of a given

case, it is negligence for a passenger to alight from a moving train. However, under the petition in the instant case, which fails to allege any fact showing negligence on the part of the defendant, and which shows that the injuries received by the plaintiff were the result of his own acts, the only question presented is one of law. There was no necessity for the plaintiff to leave the car while it was in motion, and "a railroad company is not liable in damages to one who jumps from its train when there is no necessity for doing so." *Whelan* v. *Georgia M. & G. R. Co.,* 84 *Ga.* 506 (10 S. E. 1091). According to his own petition, he could have avoided the injury by remaining on the car until the motorman had succeeded in bringing the car to a stop. On the facts stated he could not legally recover, even though the defendant were negligent. As was said in *Simmons* v. *Seaboard Air-Line Railway,* 120 *Ga.* 225 (47 S. E. 570, 1 Ann. Cas. 777), "If with a clear chance to avoid the consequences of defendant's negligence or breach of duty the plaintiff voluntarily assumes the risk occasioned thereby, such conduct on his part is not merely contributory negligence, lessening the amount of damages, but a failure to avoid danger, defeating the right to recover." It is perfectly clear to us that the court did not err in sustaining the general demurrer and dismissing the petition.

*Judgment affirmed.*